THE STATE ex inf. THE PROSECUTING ATTORNEY OF GREENE COUNTY ex rel. A. D. THOMPSON v. F. S. HEFFERNAN, Appellant.

**Division One, May 31, 1912.**

1. **QUO WARRANTO: Jurisdiction.** The jurisdiction of the courts of Missouri with respect to informations in the nature of *quo warranto,* filed upon relation, rests entirely upon the statute, Sec. 2631, R. S. 1909.

2. ————: **Relator: Must Have Special Interest: Sec. 2631, R. S. 1909.** Those only can be relators in proceedings in *quo warranto* under Sec. 2631, R. S. 1909, who have some special interest in the prosecution.

State ex inf. v. Heffernan.

.3. ——————: Information: Leave of Court to File. An information in the nature of *quo warranto*, upon relation, can only be filed by leave of court.

4. ——————: Answer: Capacity of Relator: Burden of Proof. Where the respondent, in an action in the nature of *quo warranto* begun by information filed by the prosecuting attorney upon relation, denies in his answer the capacity of the relator to bring the action, the burden is upon the relator to meet the issue so raised.

5. SPECIAL ROAD DISTRICT: Election of Officers. The manner of taking as well as of ascertaining and recording the result of the vote in an election of officers for a special road district organized under art. 7, chap. 102, R. S. 1909, is left to the board of commissioners.

6. ——————: ——————: Record: Going Behind Returns: Pleading. Where the record kept as required by law shows the appellant to have been elected a commissioner of a special road district, the court cannot go behind the returns to ascertain and declare the vote of the electors, unless the special objection to the returns has been pleaded, so that the ground upon which they are disputed may be understood.

7. CORPORATIONS: Favorable Intendments Toward Acts. Every intendment of law is made in favor of the regularity of corporate acts and proceedings.

8. EVIDENCE: Municipal Records. Where records are kept of municipal acts and proceedings the law is clearly defined that the same are receivable in evidence of the truth of the facts recited; and it would seem that when so produced they establish themselves, because they are made by accredited agents, are of a public nature and notoriety, and are usually made under the sanction of an oath of office.

Appeal from Greene Circuit Court.—*Hon. J. T. Neville,* Judge.

REVERSED AND REMANDED (*with directions*).

*J. J. Gideon* and *H. C. Young* for appellant.

(1) Ballots at an election cannot, under the Constitution, article 8, sections 3 and 9, be opened and inspected, except in cases of contested elections. (2) *Quo warranto* proceeding is not a contested election case within the meaning of the Constitution, and bal-

lots cannot be inspected therein. (3) A *quo warranto* proceeding adjudges the right to the office to no one; it only determines whether the person exercising the right to the office is a usurper. State v. Francis, 88 Mo. 357; State ex rel. v. Board, 112 Mo. 213; State ex rel. v. Spencer, 164 Mo. 34. (4) "In *quo warranto*, parties cannot go behind the official returns, unless the specific objections thereto be stated in the pleadings; there must be, e. g., a specification of the number and names of the voters alleged to be illegal; general averments in reference thereto are insufficient." State ex rel. v. Townsley, 56 Mo. 107; State ex rel. v. Vail, 53 Mo. 97. An information in the nature of a writ of *quo warranto* is essentially a civil proceeding. Burden of proof is on the relator; every reasonable intendment is to be made in favor of the regularity of the proceedings by which appellant was put into office. State ex rel. v. Kupferle, 44 Mo. 154; Ins. Co. v. Holmes, 68 Mo. 601; State ex rel. v. Smith, 22 Minn. 218; State v. Vail, 53 Iowa, 550; Ins. Co. v. Sortwell, 8 Allen, 217; Granger v. Mill Co., 59 Cal. 678. But where defendant fails to show in his answer or return that there was an office to fill, and that he was qualified to fill the office, the burden shifts on him to show that there was an office to fill and that he was qualified to fill the same. State ex rel. v. McCann, 88 Mo. 387; State ex rel. v. Meek, 129 Mo. 431; State ex rel. v. Rose, 84 Mo. 198. Requiring a vote by ballot means a secret ballot, and any inspection that destroys secrecy is prohibited. Ex parte Arnold, 128 Mo. 256; State ex rel. v. Spencer, 164 Mo. 25. Nor can the court order an inspection of the ballots and a comparison of same with voting lists to determine the voters who cast particular ballots. Montgomery v. Dormer, 181 Mo. 5; State ex rel. v. Oliver, 163 Mo. 679. Even primary elections shall be conducted and protected as other elections. State ex rel. v. Taylor, 220 Mo. 618; State v. Fleming, 158 Mo. 558.

*G. A. Watson, J. J. Collins* and *J. C. West* for respondent.

The respondent's first, second and third assignments of error is in the trial court placing the burden of proof upon the respondent. In State ex rel. v. McCann, 88 Mo. 386, in a *quo warranto* proceeding against one for usurping an office, the court makes use of these words: ''The rule being that the burden is upon the respondent to show title to the office, the inquiry is, has the respondents shown any of these facts.'' The courts also adhere to and follow this ruling in the State ex rel. v. Giovanoni, 59 Mo. App. 41; Mullery v. McCann, 95 Mo. 579; State ex rel. v. Meek, 129 Mo. 436; State ex rel. v. Powles, 136 Mo. 380.

BROWN, C.—This is an information in the nature of a *quo warranto*, filed in the circuit court for Greene county by the prosecuting attorney at the relation of an owner of land in James River Club House Road District of Greene county, a special road district incorporated under the act of the General Assembly approved April 14, 1905. [R. S. 1909, Secs. 10611 *et seq.*] It challenges the right of the defendant to exercise the office of commissioner of the district. The answer denies the usurpation charged, assumes the burden of justifying the exercise of the office, and sets forth with sufficient detail the election of the appellant by the landowners, at an election duly called by the commissioners, held on the first Tuesday after the first Monday in January, 1910. It also sufficiently states his qualification, and that he was a citizen of the United States and of this State, an owner of land in the district, and had been a resident of Greene county for more than forty years.

At the trial he identified the records of the corporation, and read therefrom the call for, and the record of, the election, showing the appointment of the tellers, the opening of the polls and the vote by bal-

lot and the declaration that there were fourteen votes cast of which the appellant received eleven and one George B. McDaniel three and declaring that appellant had received a majority of the votes cast and was duly elected commissioner of said district. This record was signed by the president and secretary of the district. He also proved his qualifications for the office and the taking and filing of the oath, and rested his case. The court remarked, "As far as the evidence shows, Mr. Heffernan was duly elected." The relator contended that this was not sufficient, and that the true return of the election is the ballots and tally sheets, to which the court remarked they were not in evidence. Relator refused to offer further evidence. The court said it would like to see them, and relator consented to their introduction. The court thereupon sent to the office of the clerk of the county court, and a paper box, unlocked, unsealed and only tied with a piece of twine was brought and emptied on the table. It contained no signatures of the officers of election, or any electors of the district, or any other evidence of authority for writings or figures thereon shown. The respondent objected to the introduction of these papers on the grounds, among others, (1) that the law does not require any return of the election of commissioners to be made to the county clerk; (2) because the proxies, ballots, tally sheets and memoranda did not purport to have been used in the election; (3) that the tally sheets were not authenticated by any one. It was admitted, however, that these were tally sheets used and the ballots cast at the election and had been returned to the county clerk by the judges and clerks.

The court overruled the objection and proceeded to examine the papers without further evidence of any kind, to which the appellant excepted. What the judge found in the box is stated by him in findings of fact filed, in substance as follows: There were at least fourteen persons present at the election, qualified

voters, and of these three voted for McDaniel and eleven for Heffernan. Twenty-five landowners in the district were represented by proxies, eighteen of which voted for McDaniel and seven for Heffernan. The acres of land represented by votes cast for Heffernan amounted to something like 1400 or 1500. It was impossible to tell the exact amount. The acres of land represented by votes for McDaniel amounted to something over 2500. It was impossible to say the exact amount. Upon this evidence the judgment of ouster was rendered. The points to which reference will be made in the opinion were properly saved and assigned as error.

I. The statute to which the road district is indebted for its existence is founded upon the theory that good roads constitute an improvement to the lands accessible to them, and that to that extent the land so benefited should be charged with the cost of such improvement. The district is an organized body, not of citizens, nor even of property holders generally, but of landowners combined for the purpose of increasing the value of their own holdings, and willing to pay the cost, or such portion of the cost, as should be imposed upon them by common consent and the law by which they were created. That public *quasi* corporations constitute legitimate instruments for this class of improvement has never been seriously questioned, their public character being based upon the incidental benefits derived by the public from such improve ments. Their government has been frequently entrusted, not to the whole body of the people of the districts included, but to the owners of the property immediately affected, upon the principle that as these were the persons peculiarly affected by the scheme, it is fair to permit them, under proper restrictions in the interest of the public, to control the funds which they themselves contribute for the purpose. In this

case the corporation was formed by the landowners of a restricted territory, under the act mentioned in the foregoing statement, now article seven, chapter one hundred and two of the Revised Statutes of 1909, all other citizens than property owners being excluded from participation by the terms of the act. By this act the district is made a body corporate, possessing the usual powers of corporations for public purposes; and it is further provided (R. S. 1909, Sec. 10617), that "it shall be a political subdivision of the State for governmental purposes." From these provisions it is evident that the Legislature did not intend to leave the municipal character of its new creation in doubt. Its corporate powers are vested in a board of three commissioners (*Id.*, sec. 10613). The validity of this corporation and, consequently, of the governing board in which its corporate powers are vested is expressly admitted by the information, and the only matter at issue in this proceeding is the election of the appellant as a member of that board. The law provides (*Id.*, sec. 10613) that these commissioners shall be "landowners in said district." There are other provisions (sections 10612, 10616 and 10621) by which votes are given to the members of the corporation based upon acres of land owned, and voting allowed through an agent or attorney. These various provisions lay the ground of the controversy in this case. Whatever the method may be of voting for the members of the governing board of the corporation, it is by the terms of the statute (*Id.*, secs. 10624 and 10625) given the control and disbursement of all moneys raised by general taxation against all classes of property in the district and all the license and poll taxes appropriated by law to road purposes, as well as of moneys raised by special taxation upon the lands of these members for whose special benefit it was organized, and who are permitted by the terms of the statute to participate in its business.

Various constitutional questions growing out of the provisions of the act which we have noticed above, were raised at the trial, and are insisted upon in the assignment of errors and brief of the appellant, by reason of which the jurisdiction of this court has been invoked, but, in the view we take of the case, it will not be necessary to notice them further than to say that these questions constitute a clear, substantial claim distinctly involved in this controversy, and give this court undoubted jurisdiction of the whole case, whatever may be the grounds upon which we may determine it.

II.   The appellant contends that the burden was upon relator to show by evidence that his interest in the subject of the controversy was such as to authorize him to maintain the proceeding in that capacity.   As there is no evidence tending to sustain this burden, it follows, if this position is well taken, that the judgment of ouster is erroneous.

The prosecuting attorney filed in the circuit court his petition asking for leave, at the relation of Mr. Thompson, to file the information, and at the same time, without any further order of the court, filed it, and thereafter the defendant appeared and filed his answer.   Upon these pleadings alone the case was tried. The information states that the relator is a resident of the road district, and the owner of lands situated therein, which is denied by the answer, and the issue so made calls for the determination, (1) whether this is an issuable averment; and, (2) if it is, whether the burden was upon the defendant to disprove it.

Mr. Selwyn, in his Nisi Prius Law (5 Ed. 1102), says: "Before the statute of Queen Anne, the crown only, by the Attorney General, could file such information." So far as information  on the relation of private individuals is concerned, this statement is probably correct; although the fact that this statute

was enacted about a hundred years after the date down to which the Common Law of England was adopted as the law of this State, renders is useless to investigate its accuracy. It is certain that the jurisdiction of our own courts with respect to such informations rests entirely upon our statute, section 2631, Revised Statutes 1909, which authorizes them. It provides that "the Attorney-General of the State, or any circuit or prosecuting attorney of the county in which the action is commenced, shall exhibit to the circuit court, or other court having concurrent jurisdiction therewith in civil cases, an information in the nature of a *quo warranto,* at the relation of any person desiring to prosecute the same; and when such information has been filed and proceedings have been commenced, the same shall not be dismissed or discontinued without the consent of the person named therein as the relator; but such relator shall have the right to prosecute the same to final judgment either by himself or by attorney." If the relator is successful, he recovers his costs against the defendant; if he is unsuccessful the defendant recovers his costs against him. From the time of the filing and exhibition of the information, it is a fight between the relator and defendant, of which the State and its officers are disinterested spectators. A person in good moral and intellectual health instinctively feels that it would not be right, or good public policy, to place every person who, under the belief that he has been fairly elected or appointed to a public office, is performing its duties to the satisfaction of all directly concerned, at the mercy of an interloper who might choose, from motives of amusement or malice to subject him to the trouble and expense of exhibiting all the minutiae of his title. We accordingly find that this court has constantly held that the enactment we have quoted means that those only can be relators in such proceedings who have some special interest in the subject of the prosecution (State ex rel. v. Lawrence, 38 Mo. 535;

State ex rel. v. Boal, 46 Mo. 528; State ex inf. v. Berkeley, 140 Mo. 184), and that such informations can only be filed by leave of court (State ex rel. v. Rose, 84 Mo. 198, 202; State ex inf. v. Beechner, 160 Mo. 78, 85; State ex rel. v. Job, 205 Mo. 26).

To the suggestion that the prosecuting attorney is the proper person to ascertain and determine whether or not the relator is qualified with respect to his interest to maintain the action, it is sufficient answer to say that the permission of the court is necessary to enable a prosecuting attorney to act, that the court can only speak by its records and that here the record is lacking, so that the "exhibition" of the information which must precede the retirement of the officer and the turning over of the prosecution to the relator is a nullity, but even if this was not so, the capacity of the relator is an important question materially affecting the defendant, and he is entitled to some tribunal in which he can try it. He has denied that capacity in his answer and the burden is upon him who alone has the facts in his possession, to meet the issue so raised, which is not susceptible of negative proof except by compelling the relator to disclose that he has not the deed in his pocket to qualify him for the position he has assumed. In this respect there is a failure of proof upon the vital question of the right of the relator to maintain his action.

III.   We have already intimated in the first paragraph of this opinion the Legislature was careful to provide in the act creating this district that it should be "a political subdivision of the State for governmental purposes" as well as "a body corporate" with "the usual powers of a corporation for public purposes," so that it is not even relegated to the class of public-quasi corporations with which such subdivisions for special purposes are usually content to be classified. Although its general powers were vested in a board

of commissioners, it did not, with equal care, prescribe
the particular manner in which the elections for its
members should be held. It did however, prescribe qual-
ifications for electors different from those prescribed
in section two, article eight of the State Constitution;
thus indicating the express intention that they should
not be governed by the general election laws of the
State. The commissioners are to call these elections,
and indicate the time and place of their holding; and
the implication is clear that the manner of taking as
well as of ascertaining and recording the result of the
vote, is left to that body. The statute provides, as we
have seen, that the secretary shall keep a true and com-
plete record of the proceedings of the board, to be at-
tested by him and signed by the presiding officer. In
this case the board, as it had the right to do, followed
generally the method prescribed by law for the conduct
of elections in private corporations, by appointing tel-
lers and receiving and recording the result. The re-
cord stated that Mr. McDaniel received three votes
while the defendant received eleven. This, together
with proof that the defendant possessed the necessary
qualifications to hold the office, and had filed the con-
stitutional and statutory oath with the county clerk,
constituted the evidence upon which he rested, and
claims that he has at least sustained the burden cast
upon him by law and the state of the pleadings. Both
parties were willing to stand or fall upon the proposi-
tion, the defendant claiming that he had made a prima
facie case upon facts stated in his answer; but the court
suggested that, although he was, so far as the evidence
showed, duly elected it would like to see the ballots
cast and the tally sheets; to which the relator con-
sented, and an unfastened paper box was brought from
the office of the county clerk, in which, for some reason
unexplained in the testimony, had been placed ballots
and tally sheets, together with proxies and memoranda,
all unauthenticated by the officers of the election. It

was admitted that these ballots had been cast and the
tally sheets used in the election. From these papers
the court seems to have ascertained, and stated in find-
ings of facts filed, that in addition to the fourteen
votes cast by those present at the election there were
twenty-five landowners represented by proxy, and that
of these a sufficient number had voted for McDaniel to
elect him. No evidence whatever was introduced or
received with reference to the authenticity of these
proxies or any of them, nor are they preserved in the
record. It was upon this evidence that the defendant
was ousted by the trial court. No proposition is better
settled or more universally recognized than that every
intendment of law is made in favor of the regularity of
corporate acts and proceedings. Where records are
kept of municipal acts and proceedings the law is clear-
ly defined that the same are receivable in evidence of
the truth of the facts recited; and it would seem to be
a rule that when so produced they establish them-
selves; because they are made by accredited agents, are
of a public nature and notoriety, and are usually made
under the sanction of an oath of office. [Black on Pub-
lic Corporations, sections 1293, 1294 and cases cited.]
The records of the body which held this election are
expressly required by the law to be kept. They con-
stitute the best evidence of its acts. Admitting that
they could be avoided and falsified by showing that the
ballots of qualified voters had been rejected, the plead-
ings are in no condition to raise this issue. The answer
is not even denied by replication. If it be said that the
defendant by introducing his evidence without making
the specific objection, waived this omission, and pro-
ceeded to trial upon the theory that a reply had been
filed, such waiver only goes to the extent of assuming
a denial of the matter contained in the answer. In this
case we do not find it necessary to decide whether this
rule applies to a proceeding in which the answer, so far
as the real merits are concerned, is the initial plead-

ing. The reasonable doctrine which had long prevailed in other jurisdictions, that to go behind the returns of the officers appointed by the statute to ascertain and declare the vote of the electors, the special objection to the returns must be pleaded so that the ground upon which they are disputed may be understood (Attorney-General v. McIvor, 58 Mich. 516; State v. Harris, 3 Ark. 570, 578; Attorney-General v. May, 97 Mich. 573), has been approved and adopted in this State (State ex rel. v. Townsley, 56 Mo. 107, 112). It follows that the admission of the evidence was unauthorized by the pleadings. If, however, a reply had been filed properly tendering this issue, the relator's position would not be improved, for there is no evidence tending to show the authenticity of any proxy, and without such proxy none of the votes added by the court could be counted.

Although an information of this character may be tried after the term of the office to which it relates has expired, we can see no reason for prolonging this case for trial other than those already disposed of. The record shows that the parties deliberately chose their ground and they should be permitted to stand on it. The judgment below is accordingly reversed and the cause remanded to the Greene Circuit Court with directions to give judgment that the defendant recover his costs against the relator. *Bond, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur, except *Valliant, J.,* absent.