THE STATE ex inf. R. W. OTTO, Attorney-General, ex rel. I. R. GOLDBERG et al., v. UNITED HEBREW CONGREGATION OF ST. LOUIS.

In Banc.     July 18, 1925.

1. **QUO WARRANTO: Instituted in Behalf of Private Citizens to Redress Private Rights.** Where the only interests relators have in a *quo warranto* to oust a corporation from the exercise of certain franchises is one common to all citizens of the State, the duty of instituting and prosecuting the action, if one exists, devolves solely upon the Attorney-General or some other public officer having like powers. An information, although filed by the Attorney-General, but not *ex officio,* but at the relation of named private persons, whose interest in the subject-matter is not stated, further than that they are citizens of the State and desire to have a proceeding in the nature of a *quo warranto* instituted and prosecuted against a named religious corporation, on the ground that it is exercising franchises not granted to it by the Constitution, in that it is holding title to real estate for purposes other than for church edifices, parsonages and cemeteries, should be dismissed.

2. ———: ———: **Cause of Action.** Relators who fail to allege and prove that they have an interest apart from the general public in the manner in which the respondent corporation exercises, or assumes to exercise, its corporate franchises, are not entitled to maintain an action in the nature of a *quo warranto,* or to have one maintained in their behalf by the Attorney-General or other public officer.

Corpus Juris-Cyc. References: Quo Warranto, 32 Cyc. p. 1445, n. 38, 42; p. 1453, n. 11 New.

State ex. rel. Goldberg v. United Hebrew Congregation.

*Quo Warranto.*

Dismissed.

*Robert W. Otto,* Attorney-General; *Abbott, Fauntleroy, Cullen & Edwards* for relator.

(1)   The *pro-forma* decree of the Circuit Court incorporating the United Hebrew Congregation granted powers to said corporation in excess of powers which under our Constitution and laws can be granted to a religious corporation and the act incorporating it is null and void.   (2)   The respondent is exercising powers, privileges and franchises in excess of those granted to it by its law and charter.   (3)   The said United Hebrew Congregation has acquired and it is now holding real estate in excess of the quantity of real estate which a religious corporation can hold under the laws of this State, and is holding title to real estate in violation of the Constitution.   (4)   Said United Hebrew Congregation is exercising all the powers, privileges and franchises granted to a corporation organized for pecuniary profit.   (5)   The powers of an incorporated religious society are to be determined by its articles and the governing statutes. Clark v. Brown, 108 S. W. (Tex. Civ. App.) 421.   (6)   Where a charter enumerates the purposes for which the corporation may acquire and hold property, it impliedly excludes all other purposes.   Case v. Kelly, 133 U. S. 21, 33 L. Ed. 513; Michigan Bank v. Niles, 1 Dougl. (Mich.), 401, 41 Am. Dec. 575; Prairie Slough Fishing Club v. Kessler, 252 Mo. 424.   (7)   Any corporation, the charter powers of which are to be used in aid of the propagation and practice of a religious belief, is a "religious" corporation.   Proctor v. Board of Trustees, 225 Mo. 51; In re St. Louis Institute of Christian Science, 27 Mo. App. 633; Cook County v. Chicago Industrial School, 125 Ill. 540, 1 L. R. A. 437, 8 Am. St. 386; Section 8, Article XI, Missouri Constitution.

*Taylor, Mayer & Shifrin* and *Chas G. Revelle* for respondent.

(1) Respondent was incorporated in 1868 under the Constitution of 1865, and conformable statutes, as a church, as distinguished from a religious corporation under the Constitution of 1875. Article I, sec. 12, Constitution of 1865; Article II, sec. 8, Constitution of 1875; Secs. 5 to 6, Chap. 77, p. 69; Laws 1865-66; Coal Co. v. Bingham, 97 Mo. 196.; Klix v. Parish, 137 Mo. App. 367; In re Christian Science, 27 Mo. App. 637; Proctor v. Board of Trustees, 225 Mo. 51. (2) The constitution and by-laws, filed with its petition for incorporation, were the constitution and by-laws of the church and within the powers and privileges of the church. Cases cited above. (3) The incorporation of respondent in no manner changed its original form of church government, nor took from it the power to transact its secular business according to its methods and customs. The church organization for all religious purposes continued after its incorporation. Catholic Church v. Tobbein, 82 Mo. 425; Klix v. Parish, 137 Mo. App. 367, 369; Second Baptist Church v. Beecham, 180 S. W. 1067; Lilly v. Tobbein, 103 Mo. 477. (4) Respondent is using the particular real estate, of which relator complains, solely and exclusively for the purposes authorized by both the former and present Constitution. Article I, sec. 12, Constitution of 1865; Article II, sec. 8, Constitution of 1875. (5) The constitution and by-laws of the respondent, even when measured by the present Constitution and statutes, are within the lawful powers and franchises of respondent. Klix v. Parish, 137 Mo. App. 358, 364; State v. Board of Trustees, 175 Mo. 52; In re Christian Science, 27 Mo. App. 633; Article 11, chap. 90, R. S. 1919. (6) This action was not instituted in good faith for public purposes, but for the special benefit and private uses of certain individuals who are seeking to coerce respondent to sell to them its property at their own price.

RAGLAND, J.—On February 17, 1925, there was filed in the office of the clerk of this court an informa- tion in the nature of a *quo warranto,* the first paragraph of which is as follows:

"Now comes Robert W. Otto, Attorney-General of and for the State of Missouri, and prosecutes this action for said State at the relation of and upon the informa- tion of I. R. Goldberg and Lena Goldberg, G. M. Griffin, John R. Harkins, J. Strassney, Alfred F. Steiner, E. A. O'Donnell, John J. Cahalin and Mary Cahalin, who are citizens of the State of Missouri and who desire to have proceedings by information in the nature of a *quo war- ranto* instituted and prosecuted against the said United Hebrew Congregation of St. Louis, and relator states that the respondent, United Hebrew Congregation of St. Louis, was created and organized as an incorporated re- ligious society on the 31st day of October, 1868, under and in accordance with an act of the General Assembly of the State of Missouri, entitled 'An Act Concerning Corporations' approved March 18, 1866, and that by vir- tue of said certificate of incorporation the said United Hebrew Congregation of St. Louis is entitled to all the privileges and capable of exercising all the powers con- ferred or authorized to be conferred by said act and amendments thereto, by the Constitution of this State, upon an incorporated religious society, and relator says that said corporation is now exercising the franchises, rights and privileges conferred by the Constitution and by said act of the Legislature of the State of Missouri, and other acts amendatory and supplemental thereto, and has its chief office or place of business in the city of St. Louis, in said State, and that it exercises many other franchises, rights and privileges forbidden by the Con- stitution and laws of the said State, as more fully here- inafter set forth."

Following the paragraph just quoted the articles of association of the "United Hebrew Congregation of St. Louis," together with the *pro-forma* decree of the Cir- cuit Court of St. Louis County creating them a body poli-

tic and corporate, are set out. Next follow averments of the particulars in which it is claimed that the respondent has unlawfully assumed and usurped franchises and privileges not granted to it. The one upon which the greatest stress is placed is this: Respondent, in 1921, purchased two lots on Delmar Boulevard, in the city of St. Louis, as a site for a synagogue or house of worship, and, notwithstanding that the lots were admirably fitted for such purpose, it thereafter purchased other lots in Ellenwood Subdivision, in the city of St. Louis, and is about to construct thereon a large building designed to be used for divers educational and social purposes, which are enumerated, of a purely secular character. With respect to the acquisition of the lots in Ellenwood Subdivision it is charged:

"That it was not necessary or essential that the respondent acquire title to the lots in Ellenwood upon which said great building is now being erected, for a church edifice or a synagogue; that at the time the said relator obtained title to said Ellenwood parcel of ground, it owned and still owns the parcel of ground heretofore described as located on Delmar Avenue, and such parcel of ground on Delmar Avenue was purchased for a site which the corporation is holding for a synagogue or church edifice, and that the acquiring of any other property and the erecting of a church edifice or synagogue on any other property is in violation of the charter rights granted to the respondents by the State, and also in violation of the Constitution and laws of the State of Missouri, and unless respondent is restrained from acquiring and using the property in the Ellenwood Subdivision, it will result in the said corporation holding title to land not needed or acquired for church edifices, parsonages and cemeteries."

The other particulars in which it is claimed that respondent has abused and misused its corporate franchise are fairly summarized in the following excerpt from the information:

"Relator says that said corporation in its corporate capacity carries on and conducts religious exercises, and provides funds for the purpose of supporting its ministry and provides the convenience of a synagogue or temple for the members of said congregation, and said corporation exercises ecclesiastical control over its members, prescribes a form of worship, subjects to church discipline such of them as fail to conform to its rules. That the preamble to its constitution provides that it is organized for the better to provide for the future happiness and salvation of the members and provide for them a synagogue for worship and to provide copies of the Jewish Holy Law and other books."

The information concludes as follows:

"Wherefore, the Attorney-General, who prosecutes in this behalf for the State of Missouri, prays the consideration of the court here in the premises, and that proceedings of law may be issued against the defendant that it may be adjudged that it is a religious corporation created under the general laws of this State for the purpose only of holding title to such real estate as is required for church edifices, parsonages and cemeteries, and that it be adjudged that it has no power or authority to hold title to the property in Ellenwood Subdivision or to engage in any business or to carry on the work of managing, controlling or operating synagogues or temples, or teaching or preaching religion therein, and that said respondent be ousted of so much of its franchise as authorizes or pretends to authorize it to exercise such powers, and for such other relief as to the court may seem fit and proper."

Upon the filing of the information a writ was issued by the clerk which required the respondent to "show by what warrant and authority it claims to have, use and enjoy the right of holding the title to real estate for purposes other than for church edifices, parsonages and cemeteries, and to . . . show cause why the said respondent should not be ousted of the franchises and priv-

ileges so assumed and usurped by said respondent as aforesaid.''

In its return to the writ the respondent sets forth that it had purchased the site on Delmar Boulevard in good faith for the purpose of erecting thereon a church edifice; that subsequently it and the unincorporated religious body for which it acts as trustee concluded that the site which had been so acquired was not suitable for their purposes; that thereupon it contracted to sell such real estate and thereafter purchased the Ellenwood Subdivision ground and is now erecting thereon a church building; and that it is its purpose to dispose of the Delmar Boulevard property just as soon as a sale thereof can be effected.   It further avers:

''That in its corporate capacity it does not carry on or conduct religious exercises or provide funds for the purpose of supporting the ministry of the unincorporated organization or other religious uses, and does not exercise ecclesiastical control over its members, or prescribe a form of worship other than to prescribe that the religious worship conducted in its edifice shall be according to the Jewish faith, and does not subject its members to church discipline, and does not engage in or carry on religious worship or collect or pay out money for any purpose other than purposes necessarily incidental to its principal purpose of holding title to real estate for church edifices and cemeteries, and so equipping and providing the same as to make them suitable to the lawful uses and purposes for which it holds title to the same.''

Paragraph ''9'' and the concluding part of the return are as follows:

''9.   Respondent for other and further return says that while this action was instituted in the name of the Attorney-General of the State of Missouri, it was in point of fact instituted by and at the instance, request and relation of I. R. Goldberg and Lena Goldberg, G. M. Griffin, John R. Harkins, J. Strassney, Alfred F. Steiner, E. A. O'Donnell, John J. Cahalin and Mary Cahalin, and that the same was not instituted in good faith for public rea-

sons or purposes or in behalf of the public, but was instituted for the special benefit and private uses and purposes of the aforesaid individuals, and that said individuals have no special interest in said matter, and that such individuals are seeking by this action to have and cause the State of Missouri through its public officials, to have litigated and determined issues of law and fact for their own personal use, benefits and profit, and that such individuals had prior to the institution of this suit instituted a suit in their own names as plaintiffs against this respondent in the Circuit Court of the City of St. Louis, and that said suit was pending at the time of the institution of this action and is still pending, and wherein they are litigating and seeking to have determined among other things the principal issues presented by and involved in this action, and that this action was instituted for the reasons and purposes herein stated and in an effort on the part of said individuals to harass and annoy this respondent and the unincorporated organization heretofore mentioned and to coerce this respondent to sell and dispose of to them and to their associates at a price of their selection the real estate which it holds in said Ellenwood Subdivision.

"Wherefore, respondent prays that this proceeding be dismissed for the reasons and upon the grounds stated in paragraph 9 of this return and further prays, in the event said proceedings are not dismissed, judgment that it is not guilty," etc.

*Relators* filed a demurrer to the return, and that was the final pleading in the case.

The information in this case, as it discloses on its face, was not filed by the Attorney-General *ex officio,* but at the relation of the private persons therein named. As to who these persons are and what interest they have in the subject-matter of the action, the only averment is that they "are citizens of the State of Missouri, and . . . desire to have a proceeding in the nature of *quo warranto* instituted and prosecuted against the said United Hebrew Congregation of St. Louis." From this

averment it would appear that the only interest that relators have in the ouster sought is one common to all the citizens of the State of Missouri, and if so, the duty, if one exists, of instituting and prosecuting the action devolves solely upon the Attorney-General or some other public officer having like powers. In order for private relators to maintain such an action as this it is necessary for them to allege and prove that they have an interest in the subject of the prosecution peculiar to them as distinguished from that of the general public. That such is the rule in this State, and generally, is not open to question. In State ex rel. v. Cairns, 265 S. W. 527, recently decided, we took occasion to review our decisions touching the construction of our *Quo Warranto* Statute and the practice thereunder; it is unnecessary to again cite and review them.

Having wholly failed to allege and prove that they have any interest apart from the general public in the manner in which respondent exercises, or assumes to exercise, its corporate franchise, relators are not entitled to maintain this action. It follows that the proceeding must be dismissed. It is so ordered. All concur, except *Woodson, J.,* absent.