STATE of Missouri ex inf. Edward C. GRAHAM, Prosecuting Attorney in and for Mississippi County, ex rel. Carol Bishop, Resident of and Taxpayer in Mississippi County, Relator-Respondent,

v.

Lindsay HURLEY, Judge of the County Court of Mississippi County, Respondent-Appellant.

No. 59330.

Supreme Court of Missouri, En Banc.

Sept. 13, 1976.

Jeffrey C. Vaughan, Joslyn, Joslyn & Vaughan, Charleston, for relator-respondent.

Marvin S. Wood, Clayton, for respondent-appellant.

SEILER, Chief Justice.

This is an information in the nature of quo warranto brought by the prosecuting attorney of Mississippi county, Edward C. Graham, at the relation of Carol Bishop, a citizen and taxpayer of Mississippi county, to oust appellant Lindsay Hurley from the office of county judge for violation of the nepotism provisions of Mo.Const. Art. VII, § 6. The trial court granted summary judgment for relator Bishop and ordered the ouster from which judgment Hurley appeals. We affirm.

On December 27, 1973, the county court of Mississippi county, including appellant Hurley, voted to establish a county ambulance service. This service was to be administered through the office of county sheriff W. J. Simmons, who was to serve as its director. The county court authorized Sheriff Simmons to hire two additional deputies to serve as ambulance drivers and attendants. Sheriff Simmons subsequently hired William Woods, appellant Hurley's son-in-law, as one of the drivers.

On January 10, 1975, the county court, including appellant Hurley, decided to sever the operation of the ambulance service from the sheriff's office. After thanking Sheriff Simmons for his contributions to the ambulance service, the court considered the matter of appointing a new director. Judge Adkisson, the presiding judge, moved that William Woods be appointed the new ambulance service director. During discussion of this motion, Judge Bennett voiced an objection to this appointment, but relented,[1] and Woods was unanimously appointed the new director with appellant Hurley participating in the vote.

Prosecuting Attorney Graham, after deciding to participate in this action and receiving leave to file by the circuit court, commenced this litigation by filing an information at the relation of Bishop. The circuit court also granted relator Bishop's counsel leave to file a written entry of appearance for her.

The issues presented by this appeal are (1) whether relator possesses a special interest in the subject matter of the litigation sufficient to entitle her to maintain an action in the nature of quo warranto, and (2) whether appellant Hurley's participation in the vote appointing his son-in-law, William Woods, to the directorship of the county ambulance service constituted a naming or appointing to public employment in violation of the nepotism provisions of Mo.Const. Art. VII, § 6.

An information in the nature of quo warranto adjudicates title to a public office or state franchise for the purpose of protecting the public against usurpers. Section 531.010, RSMo 1969; *State ex inf. McKittrick v. Murphy,* 347 Mo. 484, 148 S.W.2d 527, 530, 531 (banc 1941); *State ex inf. McKittrick v. Wymore,* 343 Mo. 98, 119 S.W.2d 941, 943–944 (banc 1938); *State ex rel. Attorney General v. Vail,* 53 Mo. 97, 109 (1873). Under English common law, quo warranto was a prerogative writ of the Crown to be filed only by the attorney general. This form of action persists in Missouri. The attorney general, prosecuting attorney, or circuit attorney may file an information *ex officio,* by virtue of the power of his office without leave of court when such an action would serve the public interest. *State ex inf. Danforth v. Merrell,* 530 S.W.2d 209, 214–215 (Mo. banc 1975); *State ex inf. Wallach v. Beckman,* 353 Mo. 1015, 185 S.W.2d 810, 813 (1945); *State ex inf. McKittrick ex rel. City of Campbell v. Arkansas-Missouri Power Co.,* 339 Mo. 15, 93 S.W.2d 887, 892 (banc 1936); *State ex inf. McAllister ex rel. Manion v. Albany Drainage Dist.,* 290 Mo. 33, 234 S.W. 339, 341 (banc 1921); *State ex rel. Boyd v. Rose,* 84 Mo. 198, 202 (1884).

Later in England, the Statute of Anne, 9 Anne c. 20 (1710), broadened the form of action to allow the attorney general to file an information in the nature of quo warranto at the relation of a private party.

---

1. The minutes of the county court state that "After voicing an objection, Judge Bennett agreed to make it unanimous".

See generally, Note, Quo Warranto in Missouri, 1972 Wash.U.L.Q. 751. This action also exists in Missouri and is governed by § 531.010, RSMo 1969 and Rule 98.01. Our statute and rule provide:

"In case any person shall usurp, intrude into or unlawfully hold or execute any office or franchise, the Attorney General of the state, or any circuit or prosecuting attorney of the county in which the action is commenced, shall exhibit to the circuit court, or other court having concurrent jurisdiction therewith in civil actions, an information in the nature of a *quo warranto*, at the relation of any person desiring to prosecute the same . . . ."

 When proceeding under the statute, as all private relators must, it is required that the government attorney exercise his discretion in the public interest when deciding whether to lend his name to the action. *State ex rel. Black v. Taylor,* 208 Mo. 442, 106 S.W. 1023, 1026–1027 (1907); *State ex rel. Smith v. Gardner,* 204 S.W.2d 319, 322 (Mo.App.1947). Similarly, an action pursuant to the statute requires that the court in its discretion grant the government attorney leave to file the information. *State ex inf. Berkley v. McClain,* 187 Mo. 409, 86 S.W. 135, 136 (1905); *State ex rel. Hequembourg v. Lawrence,* 38 Mo. 333, 334–335 (1866); *State ex rel. Attorney General ex inf. Lawrence v. Balcom,* 71 Mo.App. 27, 28 (1897). The discretion of the government attorney is complete. *State ex rel. Black v. Taylor,* 208 Mo. 442, 106 S.W. 1023, 1026–1027 (1907). Unless both agree, the private relator can proceed no farther.

 An additional requirement for the successful maintenance of a quo warranto action at the relation of a private party is that the relator have an interest in the subject matter of the litigation apart from that of a member of the general public. *State ex inf. Otto ex rel. Goldberg v. United Hebrew Congregation,* 309 Mo. 587, 274 S.W. 413, 415 (banc 1925); *State ex inf. Killam ex rel. Clare v. Consolidated School Dist.,* 277 Mo. 458, 209 S.W. 938, 941 (1919);

*State ex inf. Burges ex rel. Marbut v. Potter,* 191 S.W. 57, 58 (Mo.1916); *State ex inf. West ex rel. Thompson v. Heffernan,* 243 Mo. 442, 148 S.W. 90, 92 (1912); *State ex rel. Kempf v. Boal,* 46 Mo. 528, 531 (1870); *State ex rel. White v. Small,* 131 Mo.App. 470, 109 S.W. 1079, 1082 (1908). The purpose of this requirement is to prevent the harassment of public officials at the whim of private persons. *State ex rel. Pickett v. Cairns,* 305 Mo. 333, 265 S.W. 527, 528–529 (banc 1924); *State ex inf. West ex rel. Thompson v. Heffernan,* 243 Mo. 442, 148 S.W. 90, 92 (1912). This is a valid purpose, but appellant's contention in this regard does not warrant dismissal of this action.

The appellant relies upon two cases for the proposition that a private relator must possess a special interest in order to bring an action in the nature of quo warranto. The first case so relied upon is *State ex rel. Schneider's Credit Jewelers, Inc. v. Brackman,* 260 S.W.2d 800 (Mo.App.1953) which did not concern a public office, but rather a challenge to the right of a corporation to do business under a state charter brought by a county prosecuting attorney upon the relation of private parties. The case was transferred to this court, where it was treated as if it had originally been brought here, *State ex rel. Schneider's Credit Jewelers, Inc. v. Brackman,* 272 S.W.2d 289 (Mo. banc 1954). It is crucial to recognize that we specifically declined at that time to discuss the special interest of the relators. Id. at 294. Rather, our decision turned upon the view that the authority of a county prosecuting attorney to bring an action in the nature of. quo warranto is limited to matters concerning the state found within his jurisdiction, namely, the county. Consequently, the county prosecuting attorney had no authority to challenge a state-wide charter authorization, and any such challenge must be left to the attorney general proceeding *ex officio* or under the statute. As such, *Schneider's* offers appellant's position no support.

The second case relied upon by appellant is *State ex rel. Pickett v. Cairns,* 305 Mo. 333, 265 S.W. 527 (banc 1924). In *Pickett,*

leave of court was not expressly given to prosecute the action in the nature of quo warranto, and the court stated:

"It is clear that the circuit court did not pass upon either the respondent's title or his eligibility with respect to the office in question. The dismissing of the proceeding . . . was tantamount to the quashing of the writ on the ground that it was improvidently issued. The propriety of the court's action in so doing is the matter presented by the record for consideration.

" . . .

"But leave of court to file the information is essential to the maintenance of the action. . . .

"It is also well settled that leave to file the information at the instance of a private relator will not be granted as a matter of right, even though the title in question may be defective. The court should exercise a sound discretion in accordance with the principles of law and the circumstances in each particular case." Id. at 528.

In support of the above, the court cited *State ex rel. Haines v. Beechner,* 160 Mo. 78, 60 S.W. 1110 (1901), where the court quoted at length from *State ex rel. McIlhany v. Stewart,* 32 Mo. 379 (1862) discussing the historical development and expansion of the writ, saying as follows: " ' . . . [I]nformations at the relation of private persons, whether under the statute of Anne or under our statute, or exhibited at the common law, can be filed only by leave of the court. The information is not granted as of course, but depends upon the sound discretion of the court under the circumstances of the case' ".

It is therefore apparent that at issue in the *Pickett* case was the exercise of the trial court's discretion to grant leave to file the information. In the case before us, leave was granted.

There does exist, however, a body of cases standing for the proposition that a private relator must allege a special interest in order to bring an action in the nature of quo warranto and this requirement deserves attention. See cases cited supra.

The stated purpose of the special interest requirement is to prevent the continual harassment of public officers at the instigation of private parties. Indeed, such harassment could very well frustrate the efficient functioning of public officers. In any case, however, whether the action is ex officio or pursuant to the statute, the government attorney must exercise his discretion in the public interest to participate before an action can be maintained. Further, in an action under the statute, the court must grant the government attorney leave to file the information or the action will not proceed.

It could be argued that even without a special interest requirement for private relators (apart from the exercise of discretion required of the government attorney and court) the statutory form of action possesses greater safeguards against harassment than the *ex officio* form which may be brought without leave of court. Moreover, since a relator's interest in the litigation is properly one of many factors to be considered by the government attorney and the court in the exercise of their discretion, is not such a requirement, standing by itself, mere surplusage? Does not the discretion reposed in the government attorney and the court serve the same purpose as the special interest requirement? And finally, does not this discretion present a formidable barrier and adequate safeguard to prevent harassment of public officers by litigious individuals? Additionally, the very purpose of the statute, the protection of the public, would be frustrated if it was found that the relator did not have the requisite interest.

■ The size and complexity of our participatory democracy requires that all persons be vigilant in guarding against the abuse of power in order that government remain both responsive and responsible. It is difficult to imagine anyone other than a disappointed contestant for office with a more direct interest in the administration of this office. If an action cannot be brought at the relation of this citizen and

taxpayer, it is highly unlikely that any action will ever be brought, and the purpose of the the statute would be frustrated.

■ Additionally, in any event we are free to treat this action as one ex officio because " . . . the information contains sufficient allegations to state a cause of action in the nature of quo warranto and to show that it was brought by the prosecuting attorney in his official capacity as the representative of the state and for the protection of a public interest." *State ex inf. Ellis ex rel. Patterson v. Ferguson,* 333 Mo. 1177, 65 S.W.2d 97, 98 (1933). There is no reason to treat this case otherwise.

The next issue we address is whether appellant Hurley named or appointed his son-in-law in violation of Mo.Const. Art. VII, § 6. No other element of this section is in contention. Art. VII, § 6 provides:

"Any public officer or employee in this state who by virtue of his office or employment names or appoints to public office or employment any relative within the fourth degree, by consanguinity or affinity, shall thereby forfeit his office or employment."

In this regard, appellant puts forward two arguments. First, because Woods was already in the employ of the county at the time the court chose him to fill the position of ambulance service director, he was merely elevated or promoted, but not named or appointed. Second, because appellant's vote in the court's unanimous decision was not required for the resulting outcome, appellant did not name or appoint Woods.

Appellant's first contention is based upon the mistaken assumption that elevating or promoting and naming or appointing are mutually exclusive categories. Certainly, it may be said that a person has been elevated or promoted, but this may or may not be by virtue of an appointment. The reverse is also true. Indeed, Woods was elevated or promoted. His new position carried with it a substantial pay increase, greater duties, and the ultimate responsibility for the efficient, economical, and safe operation of the county ambulance service. The question whether a person has been promoted or

elevated is independent of and separate from the question whether a person has been named or appointed. We are concerned only with whether Woods was named or appointed.

■ The difference between the job of ambulance driver and the position of ambulance service director is further illustrated by the manner in which these vacancies were filled. The court left it to the previous ambulance service director to choose the drivers, but when it came to selecting a director, the court made its choice and this is fatal to appellant's argument. If the court did not name or appoint Woods, how did he become the director? The court's selection of a director was clearly a naming or appointing within the meaning of Art. VII, § 6. There was no way the court's selection of a director would not have been a naming or appointing.

Appellant's second argument relies upon *State ex inf. McKittrick v. Whittle,* 333 Mo. 705, 63 S.W.2d 100 (banc 1933) in which a school board member was ousted for voting to employ his first cousin as a teacher and § 49.070, RSMo 1969, which pertains to the business of county courts when only two judges are sitting.

The language in *Whittle* that is instrumental to appellant's argument is as follows:

"If at the time of the selection a member has the right (power), either by casting a deciding vote or otherwise, to name or appoint a person to office, and exercises said right (power) in favor of a relative within the prohibited degree, he violates the amendment." Id. at 101–102.

Appellant argues that because he did not cast a deciding or necessary vote, consequently there was no nepotism. It is important to recognize, however, that the nepotism provision interpreted in *Whittle* is different than our existing Art. VII, § 6. That earlier provision, Art. XIV, § 13 (1875), adopted February 26, 1924, states:

"Any public officer or employe of this State or of any political subdivision thereof who shall, by virtue of said office or

employment, have the right to name or appoint any person to render service to the State or to any political subdivision thereof, and who shall name or appoint to such service any relative within the fourth degree, either by consanguinity or affinity, shall thereby forfeit his or her office or employment."

In contrast to our present nepotism provision, the earlier provision required both that the officer or employee have the right to name or appoint and have exercised that right by naming or appointing. Whittle was arguing that he had not violated this portion of the provision because as one member of a board he, alone, did not have the right or authority to appoint, but rather the board as a body had the right or authority, or in the alternative, that this provision was directed against officials having all the right to appoint. *Whittle*, supra, at 101–102. The court disagreed in the language quoted above. The language in *Whittle* relied upon by appellant Hurley went to explain that portion of Article XIV, § 13 that is no longer in our nepotism provision, and therefore, provides no support for his position.

Continuing his argument that he did not cast a deciding or necessary vote, appellant maintains that even if he had not been sitting and Judge Bennett had voted against the appointment, Woods still would have been named ambulance service director. Appellant claims this result by virtue of 49.070, RSMo 1969, which provides: " . . . when but two judges are sitting and they shall disagree in any matter submitted to them, the decision of the presiding judge shall stand as the decision of the court . . .." This contention is correct, but the fact remains that all three judges were sitting, and nowhere in Art. VII, § 6 does it require that a deciding or necessary vote be cast. All that is required is that the naming be "by virtue of" appellant's office. In the sparse case law of this area, it is important to note that notwithstanding other factors, ouster was proper when the defendant participated and voted affirmatively for the naming of a prohibited relative, *State ex inf. McKittrick v. Whittle,* supra, and improper when the defendant abstained or did not vote in favor of the naming, *State ex inf. Stephens v. Fletchall,* 412 S.W.2d 423 (Mo. banc 1967); *State ex rel. McKittrick v. Becker,* 336 Mo. 815, 81 S.W.2d 948 (banc 1935).

The office of judge, regardless of the level, is one in which the people place a high trust. Appellant's untenable position is that a party may vote for the appointment of a prohibited relative as long as the resulting appointment was reached by one more vote "yea" than necessary. This position is contrary to the safeguard Art. VII, § 6 presents against abuse of power and does not account for the added impetus the related officer's participation lends, beyond his own vote, to the appointment. It would be virtually impossible to determine in each instance whether there had been overbearing or connivance. Therefore our Constitution, to prevent this abuse of power, provides that an appointment need be made only by virtue of one's office to be in violation. Appellant should have abstained. The judgment is affirmed.

All of the Judges concur.