**STATE ex rel. Edgar H. CRIST, Commissioner of Finance, Appellant,**

**v.**

**NATIONWIDE FINANCIAL CORPORATION OF MISSOURI, Respondent.**

**No. 40900.**

Missouri Court of Appeals,
Eastern District,
Division Three.

July 10, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1979.

Application to Transfer Denied
Nov. 14, 1979.

---

John D. Ashcroft, Atty. Gen., Terry C. Allen, Asst. Atty. Gen., Jefferson City, Irven L. Friedhoff, Gen. Counsel, Steven M. Geary, Div. of Finance, Edgar H. Crist, Jefferson City, for appellant.

Richmond C. Coburn, Jeffrey H. Pass, St. Louis, for respondent.

GUNN, Judge.

Does the phrase "real estate loan" as used in § 408.035 [1] of the Missouri Usury Statutes denote a loan for any purpose secured by real estate? Such is the core issue into which we must delve to reach a denouement in this quo warranto action instituted by relator Commissioner of Finance against respondent Nationwide Financial Corporation of Missouri, a company engaged in the business of making consumer credit loans.

On February 24, 1978, the Finance Commissioner filed a two count complaint against Nationwide: count one in the form of an information in the nature of quo warranto and count two a prayer for an injunctive relief. The Commissioner charged that Nationwide violated the usury law interest ceiling set forth in § 408.030 by making at least 133 loans to various customers at rates of interest in excess of 10 percent per annum. The Commissioner alleged that Nationwide thereby illegally contracted to receive at least $344,132.38 in usurious interest. The purposes for the 133 loans were manifold, including debt consolidation, college tuition, automobile purchase, investment and medical expenses. Nationwide contended that the loans were "real estate loans" within the meaning of § 408.-035 and were therefore exempt from the interest rate limitations of § 408.030. Though no loan was made for a purpose related to real estate, Nationwide declared that each challenged loan was secured by a second deed of trust on residential property. On February 24, 1978, the circuit court ordered Nationwide to show cause why a preliminary injunction should not be granted. On March 23, 1978, Nationwide filed a motion to dismiss the complaint on the ground that the Commissioner had no jurisdiction to institute the quo warranto action and that adequate remedies at law precluded an injunction. The motion was denied as to the issue of standing but granted for failure to state a cause of action. The court also granted the Commissioner twenty days to replead. He then filed an amended petition on April 25, 1978, and shortly thereafter Nationwide moved to dismiss the complaint. On August 4, 1978, the court granted Nationwide's motion to dismiss with prejudice and held as a matter of law that ". . . the term 'real estate loan' as used in § 408.035 means a loan secured by real estate." Such dismissal represents a final appealable order. *State on inf. of McKittrick ex rel. Handlan v. Wilkie Land Co.,* 165 S.W.2d 432 (Mo.App.1942).

The statutory provisions relevant to our decision are as follows:

Section 408.030. Interest, maximum rate allowed . . . .

1. After January 9, 1975, parties may agree in writing, for the payment of interest, not exceeding ten percent per annum, on money due or to become due upon any contract.

2. If a rate of interest greater than permitted by law is paid, the person paying the same or his legal representative may recover twice the amount of the interest thus paid, provided that the action is brought within five years from the time when said interest should have been paid. The person so adjudged to have received a greater rate of interest shall also be liable for the costs of the suit, including a reasonable attorney's fee to be determined by the court.

\*     \*     \*     \*     \*     \*

1. Statutory references are to RSMo Supp.1975 unless otherwise indicated.

Section 408.035. Unlimited interest, when allowed.

Notwithstanding the provisions of section 408.030, *it is lawful for the parties to agree in writing to any rate of interest in connection with any*

(1) Loan to a corporation;

(2) Business loan of five thousand dollars or more, but excluding loans for any agricultural activity;

(3) *Real estate loan,* other than residential real estate loans and loans secured by real estate used for an agricultural activity;

(4) Loan of five thousand dollars or more secured solely by certificates of stock, bonds, bills or exchange, certificates of deposit, warehouse receipts, or bills of lading pledged as collateral for the repayment of such loans. (Emphasis added)

Section 408.015 Definitions.

\*　\*　\*　\*　\*　\*

(6) *"Residential real estate loan" shall mean a loan made for the acquisition, construction, repair, or improvement of the real estate used or intended to be used as a residence by not more than four families.* The term shall also include any loan made to refinance such a loan. No loan secured by residential real estate shall be considered to be a business loan. (Emphasis added)

The Commissioner argues that the trial court erred when it dismissed the complaint as the loans in question made by Nationwide were not related to real estate in any way other than through the deeds of trust on residential real estate and were not, therefore, "real estate loans" entitled to unlimited interest rates under § 408.035. The Commissioner's contention is that the

usury limitations apply to the purpose of the loan and not to the security. Since the loans were not for a purpose within the unlimited interest rate provisions and the purposes of § 408.035, the ten percent interest restriction would apply regardless of the fact that the loans were secured by real estate. Nationwide's position is the opposite—that it is the security given for the loan, not the purpose, which determines whether there are interest rate restrictions. In this case, according to Nationwide, the security was real estate, thereby making the loans, despite their purposes, real estate loans free from § 408.035 interest rate strictures. Nationwide further argues that "the 10% usury limit is determined not by the definitional Section 408.015 . . . as the Commissioner suggests, but by application of" § 408.035(3), which subjects residential real estate loans to the 10% limit but exempts other real estate loans. Nationwide then postulates that there is a very vital distinction between residential real estate loans and loans secured by residential real estate, as the legislature would have used the same language in § 408.035(3) that was used in § 408.015(6) if the 10% limit were to apply to both. We reject Nationwide's analysis and believe the Commissioner's interpretation of the usury statutes is correct.

No definition is ascribed to "real estate loan" in the usury statute, and the term has not been construed by Missouri courts. Missouri case law is also quantitatively and qualitatively deficient in defining "real estate loan" as a term of art with a generally recognized meaning. Nationwide directs as to § 369.229, a section of the statute which governs the regulation of state-chartered savings and loan associations.[2] There, the

---

2. Section 369.229.

1. Every association may:

\*　\*　\*　\*　\*　\*

(2) Make loans of any type or kind, approved by the director of the division of savings and loan supervision, secured by mortgage or deed of trust constituting a first lien on real estate or a leasehold interest therein and having an unexpired term of at least five years or some term in excess of five years as

may be fixed by regulation of the director of the division of savings and loan supervision;

(3) Make additional *real estate loans* secured by liens immediately subsequent to its own first lien upon the same property and with or without additional security;

(4) Purchase *real estate loans* of the same character as that upon which the association may make an original loan and lend money on the security of such loans;

phrase "real estate loan" is used in several instances but not in the context of limitations on interest rates. Nationwide argues that the word "additional" modifies the term "real estate loans" in paragraph 3 of § 369.229, thus indicating that the loans described in paragraph (2) are also real estate loans. Since paragraph (2) essentially defines a real estate loan as any type of loan secured by mortgage or deed of trust, Nationwide concludes that the legislature intended a similar meaning when it employed the phrase in § 408.035. We do not find the reasoning conclusive. There are no indications that the legislature intended to use the phrase identically in both statutes, and such a determination would, in our opinion, defeat the purpose of the usury statute.[3] Our duty with regard to statutory construction is, after all, to seek and effectuate legislative intent. *State v. Kraus,* 530 S.W.2d 684 (Mo. banc 1975); *State ex rel. Miller v. Crist,* 579 S.W.2d 837 (Mo.App.1979); *State ex rel. Ashcroft v. Union Electric Co.,* 559 S.W.2d 216 (Mo.App. 1977).

■ Usury is "the exacting, taking or receiving of a greater rate of interest than is allowed by law for the use or loan of money." *Beneficial Finance Co. of St. Charles, Inc. v. Kitson,* 530 S.W.2d 497, 502 (Mo.App.1975). Statutes which are intended to prevent usurious practices are remedial in nature and should "be liberally construed so as to suppress the mischief and advance the remedy . . . ." *Tobin v. Neuman,* 271 S.W. 842, 843 (Mo.App.1925); *Missouri Discount Corp. v. Mitchell,* 216 Mo. App. 100, 108, 261 S.W. 743, 746 (1925). *See also: Hudson v. State Security Ins. Co.,* 555 S.W.2d 859 (Mo.App.1977). According to § 408.030, the legislature intended that lenders generally be limited to an interest charge of 10 percent per annum on any money due or to become due upon any

contract. As is consistent with the policy of liberal construction for remedial statutes, we are required to interpret narrowly the exceptions to the general rate of interest rule. *City of Nevada v. Bastow,* 328 S.W.2d 45 (Mo.App.1959). There are only four categories of loans which receive unlimited interest treatment in § 408.035. We believe that the real estate loan exception to the general rule is restricted to loans which are made for the acquisition, construction and repair or some use of real property other than residential real estate or real estate used for agricultural activity. We arrive at that conclusion for several reasons—some grammatical, some which evince legislative intent.

Initially, we note that throughout the statute the legislature consistently modified the word "loan" with the object for which the loaned money was to be borrowed and not with the method by which the money was to be secured. For example, "business loan" is defined in § 408.015(2) as a loan to be used in a business or for the purpose of acquiring a business rather than any loan secured by a business. "Residential real estate loan" is defined in § 408.015(6) as a loan made for the acquisition, repair, construction or improvement of residential real estate, not a "loan secured by residential real estate." If the General Assembly wanted to adopt Nationwide's interpretation of real estate loan, it could have done so by using the grammatical construction "loan secured by real estate" as exemplified in § 408.035(3) and (4):

(3) . . . loans *secured by real estate* used for an agricultural activity;

(4) Loan of five thousand dollars or more *secured solely by* certificates of stock, bonds, bills of exchange, certificates of deposit, warehouse receipts, or bills of lading pledged as collateral for

(5) Participate in loans with other lenders on real estate of any type that the association could originate;

(6) Sell with or without recourse any *real estate loan* it holds or any participating interest therein. All permissible acts contained in this sub-section shall be subject to such provisions, conditions, restrictions, limitations and prohibitions as the director of the divi-

sion of savings and loan supervision may from time to time by rule or regulation prescribe. * * * (Emphasis Added)

3. *See, e. g., State v. Schwartzmann Service, Inc.,* 225 Mo.App. 577, 40 S.W.2d 479 (1931), where this court held that a definition of "motor vehicle" in one act did not control the meaning of the term in another act.

the repayment of such loans. (Emphasis Added)

We are further convinced that the Commissioner's interpretation reflects legislative intent by their admonition in the definition of residential real estate § 408.015(6) that no loan secured by residential real estate shall be considered a business loan. Nationwide treats these words lightly, but we must construe the statute so as to afford significance and effect to every word. *State ex rel. Thompson-Stearns-Roger v. Schaffner*, 489 S.W.2d 207 (Mo.1973); *Hudson v. State Security Ins. Co.*, supra; *Sandbothe v. Williams*, 552 S.W.2d 251 (Mo.App. 1977). A review of the usury law reveals that "business loan" is used only to establish a category of transactions in excess of $5,000 which are exempt from the 10 percent interest ceiling. We understand the legislature to intend that a higher rate of interest cannot be imposed on loans secured by residential real estate through the ingenious device of attributing to them business purposes. Throughout the usury statute we are reminded that loans secured by residential real estate are to receive favored treatment,[4] and our construction of the legislature's exhortation is consistent with that policy. We conclude that "real estate loan" as employed in § 408.035(3) must refer to loans, however secured, for the purpose of acquiring, constructing, repairing or improving property not intended for residential or agricultural purposes. The phrase would include, for example, commercial property, investment property, or real estate intended to be used as a residence by more than four families. Any other construction would vitiate the legislative purpose to protect homeowners from the burden of exorbitant interest rates. Therefore, in applying the usury limitation provisions on interest rates, the determining factor is the purpose of the loan, not the security. In reaching our decision, we are fully aware of the various past and pending efforts of the legislature to define "real estate loan" through legislation, including S.B.No.305 in the 80th General Assembly. But we are not persuaded by such legislative history. Neither are we persuaded by either federal or other state statutes which place no interest rate limitation on real estate loans, for such statutes specifically define a "real estate loan" as a loan secured by real estate.[5]

█ Nationwide has challenged the Commissioner's standing to sue, and we hold that the trial court properly denied the motion to dismiss on that ground. The Commissioner initiated this suit as a private relator; hence, the action was governed by § 531.010 et seq., RSMo 1969 and Rule 98.01. As a private relator, the Commissioner was required to plead some special interest in the subject matter of the litigation beyond that held by a member of the general public, *State ex inf. Graham v. Hurley*, 540 S.W.2d 20 (Mo. banc 1976), and was required to obtain permission from the Attorney General and the circuit court in order to proceed. Obviously, the Attorney General has granted permission to proceed; indeed, his name has been lent to action and his office has actively participated in the proceedings. The court's leave to proceed was demonstrated when, following receipt of relator's information in the nature of quo warranto, the court issued to respondent an order to show cause why its corporate charter should not be revoked or why it should not be prevented from making loans bearing usurious rates of interest. *State ex inf. Graham v. Hurley*, supra. See: *State ex rel. Pickett v. Cairns*, 305 Mo. 333, 265 S.W. 527 (banc 1924). As for the contention that the Commissioner of Finance did not plead the requisite special interest, we agree with the trial court. The threshold level of interest required to be shown by a private relator is not difficult to attain. Our Supreme Court recognized that fact in *State ex inf. Graham v. Hurley*, supra, where a taxpayer-citizen sought to oust a county

4. *See e. g.*, § 408.036, which prohibits a prepayment penalty on certain debts secured by residential real estate and § 408.052, which prohibits a lender from charging points or other fees beyond a 1% origination fee on any residential real estate loan.

5. *See, e. g.*, 12 U.S.C. § 371; Ky.Rev.Stat. § 289.011(21); Mich.Stat.Ann. § 28.540(167). *See also: Northway Lanes v. Hackley Union Nat. Bank & Trust Co.*, 464 F.2d 855 (6th Cir. 1972).

judge from office for violating the nepotism provision of the Missouri constitution:

> The size and complexity of our participatory democracy requires that all persons be vigilant in guarding against the abuse of power in order that government remain both responsive and responsible. It is difficult to imagine anyone other than a disappointed contestant for office with a more direct interest in the administration of this office. If an action cannot be brought at the relation of this citizen and taxpayer, it is highly unlikely that any action will ever be brought, and the purpose of the statute would be frustrated. Id. at 24–25.

By applying this reasoning, the chief finance officer for the State has evinced sufficient special interest by his desire to prevent a violation of a law which he is entrusted to enforce. Therefore, we remand this case to the circuit court for a determination as to the merits of the Commissioner's complaint and as to what relief, if any, would be appropriate.

Reversed and remanded.

REINHARD, P. J., and CRIST, J., concur.

