THE GEORGE C. PRENDERGAST CONSTRUCTION COMPANY v. DAVID GOLDSMITH et al., Appellants.

Division Two, February 16, 1918.

1. **SEWER:** Park: Liable to Residential Use. In determining whether certain special tax bills are legal, for that a park was not included in the sewer district, the court will take the situation as it finds it and treat the whole park area as a park, although the deed of the park tract to the city required two hundred feet around its outer edges to be leased for residence purposes—a condition that has not been complied with in the forty years since the deed was made.

2. **FINDINGS OF COURT:** Immaterial Matter. The findings of the trial court of an immaterial fact does not invalidate its findings of material and relevant facts, provided the facts found are sufficient to support the judgment.

3. ———: Silence as to Material Issue: Fraudulent Conduct of City in Excluding Park from Sewer District. If a special finding of the trial court is silent as to a material point it is to be deemed a finding against the party who has the burden of proof. If the court made no finding as to whether the city acted fraudulently, oppressively or arbitrarily in not embracing a public park within

the sewer district, that must be regarded as a finding on that point against the owners of land in -the district when they are sued on special tax bills issued to pay for the construction of the sewer and which they charge are void because said park was not included in the district, since the burden was on them to establish the fraudulent conduct of the city.

4. **SEWER DISTRICT: Exclusion of Park: Illegal and Arbitrary.** The exclusion of a city park from the sewer district will not be held to be arbitrary and illegal on its face, if the amount of water that actually gets into the sewers constructed is negligible.

5. ————: ————: ————: **Natural Drainage.** The city in laying out a sewer district has the right to consider the fact that nearly half of a public park front drains away from the street in which the sewer is laid, and that the other half is park grounds which absorb a large portion of the rainfall, unlike roofs and pavements which discharge all the water into the sewer, and therefore its act in excluding the park from the sewer district cannot be held to be arbitrary and illegal, as a matter of law.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

AFFIRMED.

*David Goldsmith* for appellants.

(1) Special findings under Section 1972, R. S. 1909, must be responsive to all the issues. Cochran v. Thomas, 131 Mo. 268; Fahy v. Grocer Co., 57 Mo. App. 76; Brant v. Robertson, 16 Mo. 129; Downing v. Bourlier, 21 Mo. 149; Sisson v. Barrett, 2 N. Y. 406; Clark v. Neumann, 56 Neb. 374; Phipps v. Harlan, 53 Cal. 87. (2) The findings of fact should be all the ultimate facts in issue, and not of evidenciary matters. Murdoch v. Finney, 21 Mo. 140; Sutter v. Street, 21 Mo. 157; Allison v. Darton, 24 Mo. 343; Powers v. United States, 119 Fed. 562, 56 C. C. A. 128. (3) The findings of fact made by the trial court in this cause are not responsive to the issues. (4) The findings of law made by the trial court in this cause are indeterminate and erroneous. (5) The finding, upon which the judgment of the trial court is based, relates solely to the motives of the Municipal Assembly of the city of St. Louis, and

these motives are immaterial. Dreyfus v. Lonergan, 73 Mo. App. 345; Brown v. Cape Girardeau, 90 Mo. 383; Kansas City v. Hyde, 196 Mo. 507; Soon Hing v. Crowley, 113 U. S. 710; Kerfoot v. Chicago, 195 Ill. 232; 2 Dillon on Municipal Corporations (5 Ed.), p. 914, note 3; McQuillin on Municipal Corporations, sec. 378, pp. 831, 832; Potter v. McDowell, 31 Mo. 69; Reed v. Pelletier, 28 Mo. 178; Bump on •Fraudulent Conveyances (4 Ed.), secs. 27, 243, 333 and 375, pp. 24, 282, 368 and 404. . (6) The findings of fact made by the trial court, in connection with the undisputed facts, show conclusively that the ordinances, upon which the special tax bill in suit is based, are arbitrary; and this renders that tax bill invalid. Prior v. Construction Co., 179 Mo. 440; Heman v. Schulte, 166 Mo. 417; Heman v. Allen, 156 Mo. 550; State ex rel. v. Birch, 186 Mo. 219; Corrigan v. Gage, 68 Mo. 541; St. Louis v. Richardson, 76 Mo. 485; Masters v. Portland, 24 Ore. 161; Hanscom v. Omaha, 11 Neb. 43; Fraser v. Mulaney, 129 Wis. 385; Lawrence v. Grand Rapids, 166 Mich. 134; Trust Co. v. Chicago, 162 Ill. 509; Copcutt v. Yonkers, 31 N. Y. Supp. 659; Vandeventer v. Long Island City, 139 N. Y. 39; Denver v. Kennedy, 33 Colo. 81; Lenon v. Brodie, 81 Ark. 217; Beck v. Holland, 29 Mont. 234; State ex rel. v. District Court, 95 Minn. 71; Whitney v. Fawcett, Styles Rep., 13.

*A. R. & Howard Taylor* for respondent.

(1) The special tax bill sued on, re-issued, has the prima-facie proof of validity as if originally so issued. Galbraith v. Newton, 45 Mo. App. 312; Vieths v. Planet Co., 64 Mo. App. 207. (2) The special tax bill in suit is prima-facie evidence of the liability of appellants as owners to pay the bill. Charter of St. Louis, art. 6, sec. 25; Woerner's Revised Code of St. Louis. (3) Under the admissions of the answer, the work was done according to contract and accepted by the city. (4) The only issue presented by the answer, then, is, was the passage of the ordinances for the construction of the

sewer and for the assessment district the result of fraud, wilful discrimination and intent to oppress the owners of land in the assessment district, by omitting to include Tower Grove Park in the assessment district, and under the rule of decision in this court, there being no evidence or even contention that the plaintiff was in any manner cognizant or privy to said alleged fraudulent action of the city and its officers. Such fact, if true, is no defense to this action. An objection to any evidence under the answer would have been properly sustained. Paving Co. v. Field, 188 Mo. 206; Jaicks v. Merrill, 201 Mo. 110; Warren v. Paving Co., 115 Mo. 580; Bank v. Woesten, 147 Mo. 483; Improvement Co. v. St. Louis, 257 Mo. 305. (5) In the absence of evidence of fraud, oppression or palpable injustice, the exercise of the discretion confided to the city to pass ordinances establishing sewers and sewer districts is conclusive and not subject to collateral attack. McGee v. Walsh, 249 Mo. 286; Heman v. Allen, 156 Mo. 543. If there was connection made with this sewer after the sewer was constructed and tax bill issued, it in no manner affects the validity of the tax bill. Heman v. Schulte, 166 Mo. 417; Prior v. Construction Co., 170 Mo. 451. (6) An inspection of the court's finding of facts shows that every constituent fact involved in the controversy, as well as the final constitutive facts of the affirmative defense alleged in the answer, were found by the court with painstaking care. The findings of facts find all material facts in controversy relating to the feasibility of the drainage of the area of Tower Grove Park through the sewer in question and do find that it was feasible to drain a considerable part of such area through the sewer, but the court did not find and plainly could not find, that the whole of such area could be so drained, because the habit of water to seek the lower level is obstinate, and thus the area of at least 300 feet by 300 feet, being much lower than Kingshighway, could not be drained into this sewer. And the court does properly find and was bound under the

evidence to find, that the evidence did not show that drainage by way of this sewer was the only or exclusive manner of draining this area of the park. The court, in its finding, passed upon each and every constitutive fact alleged in the answer as a ground for assailing the validity of the assessment as oppressive or fraudulent. This was a full compliance with the statute, the manifest object of which is that such essential facts are to be found in order that the appellate court can determine whether or not the conclusions of law made are warranted by the facts found.

ROY, C.—This is a suit to enforce the lien of a special tax bill of $1297.60 for the construction of sewers. Plaintiff had judgment for $1394.83, and defendants have appealed.

The property has a front of 486 feet 1½ inches on the west side of Kingshighway Boulevard, with a depth of 171 feet, bounded north by Bischoff Avenue and south by Old Manchester Road. About a quarter of a mile south of defendant's land is Tower Grove Park, fronting west on the east side of said boulevard, and extending south 1477 feet to Arsenal Street. The entrance to the park is two hundred feet wide, the south side of the entrance being about eight hundred feet from the southwest corner of the park. The park drive from the entrance runs west about 300 feet before it divides. There is no further showing by the evidence as to the location of the park drives. There are gutters along the park drives, but the evidence does not show any other gutters in the park.

Edwin Jolly, city engineer of grades and surveys, a witness for defendants, stated that by reason of a depression in the southwest part of the park the surface water of the park flowed north about 600 feet to the north side of the park, and that the middle of such depression is about 200 feet from Kingshighway. Beyond that the park rises to the east. At another place in his testimony he said: "The head of this sag is right here at the south side of the park entrance." That part of the park north

of the entrance and for a distance of 600 feet east has a fall of 18 feet west to Kingshighway. What if any northern slope it has is not shown except that Kingshighway has a very gradual slope to the north along the entire front of the park.

In 1904 the city established Manchester Road Joint Sewer District, and caused a joint sewer about a mile and a half long to be constructed in the northern and lower part of the district. That sewer is nine feet in diameter at its east end and half that diameter at its west end. It is five and·a half feet in diameter on Bischoff Avenue where it passes along the north end of defendants' property. Opposite defendants' property across the boulevard is "Shaw School," and east of that are the extensive grounds of the Missouri Botanical Garden. The plat of that joint sewer district is before us, and a rough estimate shows that about eighty acres of the park and about a hundred and twenty-five acres of the Botanical Garden are in that joint district.

In 1905 the city established Manchester Road Sewer District Number Three, and provided for the construction of sewers therein. It is for that construction that the taxes herein are sued for. That district Number Three as shown by the plat lies on both sides of the boulevard. On the west side it extends from Arsenal Street to Bischoff Avenue, but on the east side the lands of the park and of the Botanical Garden are left out. All other tracts within about 670 feet of the boulevard and on the east thereof are in the district. Among the district sewers thus constructed is one in the boulevard from Arsenal Street to Bischoff Avenue. It is twenty-five inches in diameter at Arsenal Street, twenty-seven and a half inches in diameter at the park entrance and at the northwest corner of the park. It is four feet two inches in diameter in front of defendants' property, and empties into the joint district sewer at Bischoff Avenue. A sewer twenty-five inches in diameter was laid in Old Manchester Road from the sewer in the boulevard west along defendants' south boundary. A fountain and a hydrant are in the park near the entrance. Before the construction of

the sewer the water from the fountain and hydrant and from the gutters in the park passed through a pipe under the boulevard into a gully on the west side. The water now flows into the sewer near the entrance. The evidence does not show when or by whom that connection was made. Plaintiff testified it was not made when the sewer was laid.

The evidence does not show how much water from any source enters the sewer from the park. There is a "guard house" near the entrance. It does not appear how large that structure is, nor whether it has sewer connection.

Nearly all the land in said sewer district is subdivided into lots and blocks. Defendants' property is about two acres in extent, but is not subdivided into lots and blocks.

The park has no connection with said sewers except as shown above. The answer alleges that the west end of the park extending east about a thousand feet is as much benefited by the construction of the sewers as any land in the district, and that it was left out of the district by the city and its officers with the intent on their part that it should not be charged with its proportionate part of the cost of the sewer, and in the intentional disregard on the part of the city of its duties and the rights of the defendants and other owners of property in said district.

The cause was tried without a jury, and the court stated its finding of facts and conclusions of law in writing which included the following:

"That with the exception of an area composing some 300 feet each way, and located at the southwestern corner of Tower Grove Park, the western part of said park for a distance of some 600 feet east of Kingshighway is of an elevation higher than said Kingshighway between Arsenal Street and Magnolia Avenue, and the natural drainage thereof is in the main westwardly towards said Kingshighway, and the court does further find that before the building of the sewer in question surface water and hydrants drained from said part of the park, through drains and gutters, under said street

and sidewalk, to a point west of Kingshighway; that whatever drains for surface and hydrant water now exist in said western and northwestern portion of said park lead into that section of the sewer in question, situated in Kingshighway adjoining said park, but the court is unable to determine from the evidence as to when such connection with said sewer was accomplished, or by whom.

"I do also find that at the time the work in question was performed it was provided by the 'Revised Ordinances of the City of St. Louis that water draining from roofs of houses should not flow over sidewalks, but should be conducted through pipes to a sewer, if available, and if not, then such water should be conducted through pipes below the sidewalk, and into the open gutter of the street.

"And the court does not find from the evidence that it is not possible or feasible to drain the surface water now falling upon or collected from that portion of Tower Grove Park, and the reserved strip of 200 feet, which is higher than and inclined towards Kingshighway, from the surface of said land in any other manner than through or by the district sewer constructed in Kingshighway, or that sewage from houses upon said reserved strip, if any there ever be, cannot be disposed of by means other than said sewer.

"Conclusions of Law.

"Finding the facts as aforesaid, the court concludes as a matter of law, that it was within the powers of the Municipal Assembly, in the passage of ordinances establishing the sewer district wherein the work sued for was performed, to embrace and designate therein only such real estate as, in its judgment, would be benefited thereby, and that the discretion vested in said municipal legislature is not subject to review by this court, unless the powers of said legislature were affirmatively shown to have been exercised fraudulently, oppressively or arbitrarily. [Prior v. Construction Co., 170 Mo. 439; Heman v. Schulte, 166 Mo. l. c. 416; Heman v. Allen, 156 Mo. l. c. 550.] And it is further concluded,

as a matter of law, from the precedent facts, that the mere omission of lands from said district, which might, at one time, be reasonably included in the sewer district in question, or as to which it is reasonable to assume that the same would more conveniently be served by the sewer in question than any other, does not justify the court in concluding that the Municipal Assembly, in omitting said lands from the sewer district in question, was actuated by motives of fraud or oppression; or that the prima-facie liability of defendants (Sec. 25, art. 6, Charter of City) established by the certified special tax bill is thereby rebutted and overturned.''

We here insert a plat which we have made in order that there may be a clear understanding of the facts as they appear.

There is no showing of any fraud, oppressiveness or arbitrariness on the part of the city except such, if any, as may be drawn from the face of the proceedings in the light of the evidence stated.

I. . The appellants in their briefs say:

"The trial court in its findings, which are conclusive, stated, and the entire evidence shows, that the surface waters from the whole of the western 600 feet of the park, with the exception of about 300 feet square in the extreme southwest corner, and accordingly **Findings of Court.** the surface water from a frontage of about 1170 feet on Kingshighway (the entire frontage being 1470 feet) by a depth of about 600 feet, drained naturally into Kingshighway; that for many years prior to the construction of the district sewer in question, this surface water was collected by gutters along the driveways in the park, and carried, first, into inlets in Kingshighway, and thence through underground pipes into a ravine on the western side of Kingshighway; and that upon or since the construction of the sewer these drains have been connected with, and the surface waters accordingly drained into, the sewer. The land from which these waters come is shown by the testimony of the city's own engineer of grades and surveys to have a fall of eighteen feet or more in six hundred, or of nearly one foot in twenty, which is certainly very unusual in the city of St. Louis. The evidence, therefore, warranted the conclusion that the amount of these surface waters was unusually heavy; at all events, it showed that the surface water thus drained included all the surface water from that part of the park. What more was it practically possible to show? How could the amount have been measured?"

We think that statement shows a misunderstanding of the court's finding of facts and that most if not all of the contentions of appellants here grow out of such misapprehension. The trial court did not make any such broad finding of facts in favor of defendants as they claim. There is no finding, as claimed by appellants, that all the

600 feet of the park except the 300 feet square drains naturally into Kingshighway. The trial court merely found that "the natural drainage thereof is in the main westwardly towards Kingshighway." Defendants' witness Jolly proved that for a distance of six or eight hundred feet north and south just inside the park the surface water flows south and not west, and that it, consequently, does not get into Kingshighway.

The trial court does not find that, prior to the construction of the sewer, *all* the water on the east portion of the park was collected in gutters along the park driveways and carried under Kingshighway into a ravine as claimed by appellant. It only says: "Surface water and hydrants drained from said part of the park, through drains and gutters, under said street and sidewalk, to a point west of Kingshighway."

Neither does the trial court find that *all* the surface water of that part of the park is now collected into such gutters and thence discharged into such sewer. It merely says: "Whatever drains for surface water and hydrant water now oxist in said western and northwestern portion of said park lead into that section of the sewer in question."

The accompanying plat shows that very little water, comparatively, from the park gets into the gutters along the park drives. It does not appear that any water from the park gets into the sewer except that which passes from such gutters and the hydrant, and the trial court did not find that any water from the park gets into the sewer except that from such gutters and the hydrant. That must be comparatively very little.

We call attention to the fact that a fall of eighteen feet in six hundred is not a fall of one foot in twenty as claimed by appellants, but only of one foot in about thirty-three.

II. The appellants contend that the trial court overlooked one fact conclusively shown by the evidence, namely, that the two hundred feet strip around and within

the park is, by the terms of Shaw's deed to **Situation of** the city, required to be leased for residence **Property.** purposes. It is sufficient for the purposes of this case, to say that from the beginning in 1868 the city has failed to conform to that part of the provision of the deed. Whether or not it ever will do so does not appear in this case. We take the situation as we find it and treat the whole tract as a park as the city seems to have done.

III. Appellants call attention to their answer which alleges that the officers and representatives of the city omitted the park from the sewer district with the intent **Finding of** that it should thereby escape the payment **Immaterial** of any portion of the cost of the sewer, and **Fact.** with the intentional disregard on the part of the city of its duties in the matter and of the rights of the defendants and other owners of lots in the district.

Appellants say that the findings of the trial court are not responsive to the issue thus raised by the answer and by the reply thereto.

But in their brief they say: "The finding upon which the judgment of the trial court is based, relates solely to the motives of the Municipal Assembly of the city of St. Louis, and these motives are immaterial."

Without deciding the point as to whether such motives are material, we call attention to the fact that the finding of the court on the question of motives was in direct response to defendants' answer. The finding of the court as to an immaterial fact does not invalidate the findings, provided the other facts found are sufficient to support the judgment.

IV. Appellants contend that the trial court made no finding of fact as to whether the city acted fraudulently, oppressively or arbitrarily in the proceeding, and that such failure to find on that point is reversible error.

They cite on that point Cochran v. Thomas,
**Silence as to Material Fact.** 131 Mo. 258, l. c. 268. The court was there speaking of the effect of a request by a party for a finding of the facts in accordance with the statute, and said:

"We are of the opinion that under this provision the court is required to find and state in writing, not only every constitutive fact in issue to which his attention is directed, but also separately the conclusions of law thereon in order that exceptions may be taken thereto."

Appellants overlook the language of the opinion in that case on page 278, where it is said:

"The statute requires the court, when requested by either party, to 'state in writing the conclusions of facts found separately from the conclusions of law.' [Sec. 2135, R. S. 1889.] Elliott, in his recent work on Practice (Sec. 975), gives this rule as one, in his opinion, founded upon right principle: 'If a special finding is silent on a material point it is deemed a finding against the party who has the burden of proof.' This rule finds support in the decisions of the Supreme Court of Indiana. [Railroad v. Hart, 119 Ind. 280; Bank v. Bolen, 121 Ind. 304.]"

The judgment in that case was accordingly affirmed.

In this case the burden of proof was on defendants as to the point in question, and if the court failed to state its finding on that point it must be regarded as a finding against them.

V. Appellants contend that, on the face of the record, the action of the city should be held arbitrary and illegal. The foregoing plat shows that one sewer begins at A, runs east to the southwest corner of the **City's Arbitrary Conduct.** park at E, thence north along the park front, and about 400 feet beyond to its confluence with another sewer, with a total length of about 3100 feet and a diameter of only 27½ inches at its largest part. The size of that sewer was increased only once in its course along the park front, and that

was at a point only about 400 feet from the southwest corner of the park, and defendants' evidence conclusively shows that no water gets into the sewer from the park within that 400 feet. What is more, it is not shown that the city made any provision for admitting the water from the park into the city sewer, and, so far as that showing goes, the amount of water that actually gets into the sewer from the park is negligible for the purposes of this case.

Another sewer begins at B and runs through a portion of the city where the land on both sides is in lots and blocks, and has streets, pavements and buildings. It runs a distance of about 3600 feet before reaching C, its junction with the first mentioned sewer. It has several short laterals. Its diameter for some distance before and after getting to C is four feet and two inches. Its size was not increased because of its receiving the contents of the first mentioned sewer. It should be noted that while it is only about one-sixth longer than the other sewer its capacity is about three times as great.

The city, in laying out the sewer district, had a right to consider the fact that nearly half the park front drained south and not into Kingshighway and that the other half was park grounds which absorb a large portion of the rainfall, unlike roofs and pavements which discharge all the water into the sewer. It had the right to consider that the park as the dominant tract was under no legal obligation to dispose of its surface water flowing therefrom in its natural direction. These facts were not such as to necessarily control the city in its action, but they were entitled to consideration.

The points above decided, we think, cover substantially all the case as presented by appellants. Judgment of trial court affirmed.

*White, C.,* not sitting.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All of the judges concur.