STATE of Missouri, ex inf. Michael SANDERS, ex rel. CITY OF LEE'S SUMMIT, Respondent,

v.

CITY OF LAKE LOTAWANA, Arthur R. Van Hook, David Cooley, Mark Pfefferkorn, Jack Kirse, Frances Grossman, Robert Reid, and Arthur R. Lascala, Appellants.

No. WD 66758.

Missouri Court of Appeals, Western District.

Feb. 6, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2007.

Application for Transfer Denied May 29, 2007.

Stephen James Moore, Kansas City, for appellant.

Neil Ronald Shortlidge, Overland Park, KS, for respondent.

PAUL M. SPINDEN, Judge.

Jackson County municipalities Lee's Summit and Lake Lotawana have been vying against each other since 2001 to annex approximately 1200 acres, known as the Barber property, situated between the two cities. After Lake Lotawana completed annexation of the tract, Lee's Summit initiated this *quo warranto* action, authorized by Jackson County Prosecuting Attorney Michael Sanders, to oust Lake Lotawana from exercising jurisdiction over the tract. Lee's Summit coupled the action with a declaratory judgment action in which it asked the circuit court to declare that it took the first valid step toward annexing the tract and therefore had superior claim to it and that Lake Lotawana's annexation was defective. The circuit court entered judgment for Lee's Summit. It issued an order in *quo warranto* ousting Lake Lotawana from the tract, and it declared that Lake Lotawana's annexation was void. It further declared that Lee's Summit had "prior jurisdiction" over the tract and enjoined Lake Lotawana from proceeding with annexation of it until Lee's Summit had an opportunity to complete its annexation process. Lake Lotawana appeals.

## JURISDICTION

Lake Lotawana first challenges the circuit court's jurisdiction to consider Lee's Summit's petition. Because the scope of the circuit court's subject matter jurisdiction is a question of law, we review it *de novo. Pettigrew v. Hayes,* 196 S.W.3d 53, 56 (Mo.App.2005).

Lake Lotawana asserts that, because it completed annexation, Lee's Summit had only "expectancy jurisdiction," not prior jurisdiction. It contends that Lee's Summit had only an expectation of attain-

ing prior jurisdiction if it could establish that Lake Lotawana had erred in its annexation process and that this expectation was not enough to satisfy the requisite prior jurisdiction. We reject the point.

Although Lake Lotawana had completed annexation, the circuit court correctly recognized that Lee's Summit should still prevail if it could establish that it took the first valid step and, therefore, had prior jurisdiction. *City of St. Joseph v. Village of Country Club*, 163 S.W.3d 905, 907 (Mo. banc 2005). Because the petition filed by Lee's Summit averred that it had taken the first valid step—an averment that the circuit court was obligated to accept as true in considering Lake Lotawana's motion to dismiss—the petition stated a cause of action for which relief could be granted. The circuit court, therefore, had jurisdiction to consider it.

■ Lake Lotawana also argues that Lee's Summit lacked standing because it did not assert its action under Section 71.012, RSMo 2000, its exclusive remedy. Section 71.012.2(3) says:

If a written objection to the proposed annexation is filed with the governing body of the city ... not later than fourteen days after the public hearing by at least five percent of the qualified voters of the city, ... or two qualified voters of the area sought to be annexed if the same contains two qualified voters, the provisions of sections 71.015 and 71.860 to 71.920, shall be followed.

Lake Lotawana argues that, because Lee's Summit was not a qualified voter living in Lake Lotawana or a resident of the Barber property, Section 71.012.2(3) did not authorize it to object to Lake Lotawana's annexation. Lake Lotawana's argument would be correct were Lee's Summit seeking to object to Lake Lotawana's "proposed annexation." Instead, it is contesting Lake Lotawana's authority to annex the Barber property via a proper method, *quo warranto*. Lake Lotawana's assertion has no merit.

■ Lake Lotawana further argues that the circuit court lacked jurisdiction because Lee's Summit had abandoned the basis for Sanders' authorizing the *quo warranto* action; *i.e.*, Lee's Summit's 2001 resolution of intent to annex.[1] Lake Lotawana argues that, by abandoning the basis for Sanders' authorizing the *quo warranto*, Lee's Summit lost standing. We do not need to pass judgment concerning the validity of Lake Lotawana's position because Sanders' information declared a dual basis for authorizing the lawsuit. In addition to the matter of the 2001 resolution, Sanders articulated a second purpose for the action: resolution of "disputes and issues pertaining to Lake Lotawana's annexation Ordinance No. 718." Validity of Ordinance No. 718 is a central issue of this dispute. It purportedly effectuated a voluntary annexation of the tract. Lee's Summit had standing to initiate the action.

■ Lake Lotawana further argues that the circuit court lacked jurisdiction because Sanders' information did not establish that Lee's Summit had a special interest in the Barber property. To pursue an action in *quo warranto*, a private relator must "have an interest in the subject matter of the litigation apart from that of a member of the general public." *State ex inf. Graham, ex rel. Bishop v. Hurley*, 540 S.W.2d 20, 23 (Mo. banc 1976). But "[t]he threshold level of interest required to be shown by a private relator is not difficult to attain." *State ex rel. Crist v.*

---

1. Lee's Summit originally based its claim of prior jurisdiction on a resolution of intent to annex. It abandoned this claim and based its claim on subsequent actions.

*Nationwide Financial Corporation of Missouri,* 588 S.W.2d 8, 12 (Mo.App.1979).

Lee's Summit had an interest in Lake Lotawana's annexation of the Barber property that exceeded that of the general public. As Lee's Summit pleaded in its petition, Lake Lotawana's claim of jurisdiction over the property directly affected Lee's Summit's legal status as the municipality with prior jurisdiction. Having taken steps to annex the land and having actively pursued the matter in competition with Lake Lotawana, Lee's Summit had a special interest in testing the legality of Lake Lotawana's annexation. That Sanders' information did not plead these facts and cited only Lee's Summit's 2001 resolution of intent to annex and Lake Lotawana's Ordinance No. 718 is not significant because the facts pleaded in the petition, rather than those in the information, were the operable facts that shaped the lawsuit's issues.

The purpose for an information in *quo warranto* changed during 1981 when the Supreme Court promulgated Rule 98, which set procedures for *quo warranto* actions. None of the components of Rule 98 mentions the filing of an information, which, before Rule 98, was traditionally the initial affirmative pleading in a *quo warranto* action. *See, e.g., State ex inf. Ellis, ex rel. Patterson v. Ferguson,* 333 Mo. 1177, 65 S.W.2d 97, 98 (1933). Instead of the filing of an information as the initial affirmative pleading, Rule 98.03 provides for the filing of "a petition ... in the appropriate court." The only mention of "information" is in Rule 98.02, and it is not referring to the filing of a document. It merely is recognizing that the attorney general or a prosecuting attorney may authorize a private relator "when action is brought upon information at the relation of another[.]" We need not decide whether or not the filing of an information remains necessary under Rule 98. We conclude from Rule 98.03's identification of a petition as the initial affirmative pleading and the lack of mandate that an information also be filed that the only function served by the filing of an information in addition to a petition is, as the circuit court stated, to provide "the means of interposition by which a proper state official exercises discretion in the public interest by lending his or her name to the proceedings so that a private relator can proceed in quo warranto." [2]

Lake Lotawana alternatively argues that Lee's Summit did not allege any special interest in its petition. This is incorrect. The petition referred to its original attempt to annex via its 2001 resolution, later abandoned, and its later adoption of Ordinance No. 5800 calling for an election to annex. It also referred to some of the steps that it had taken in preparing to annex the tract, including studies and analyses to determine how it could provide public services to the area. These averments constituted allegations of special interest, although not specifically identified as such.

Lake Lotawana next asserts that Lee's Summit did not have standing because its petition did not allege that it suffered prejudice from Lake Lotawana's procedural annexation errors. We disagree. Lee's Summit clearly alleged prejudice by arguing that it, as a city with prior jurisdiction, would be thwarted in

---

2. Perhaps parties continue to file informations after Rule 98 for the reason suggested by the late former Chief Justice Charles Blackmar in *Missouri Appellate Practice and Extraordinary Remedies* at Section 14.16 (Mo. Bar 4th ed. 1963): "One should exert oneself to find out what has been done in the past in similar situations and then do one's best to conform one's case thereto."

annexing the tract if the circuit court considered Lake Lotawana's annexation process to be valid.

Lake Lotawana further argues that the circuit court erred in concluding that Lee's Summit established standing to question the validity of Lake Lotawana annexation because the annexation was *de facto*. We again disagree. Lake Lotawana's completed annexation did not "pull the plug" on Lee's Summit's continuing to pursue annexation. Prior jurisdiction based on a first valid step is the significant factor, not completion of the annexation process. *City of St. Joseph,* 163 S.W.3d at 907; *Mayor, Councilmen, and Citizens of City of Liberty v. Dealers Transport Company,* 343 S.W.2d 40, 42 (Mo. banc 1961).

Relying on *City of Bridgeton v. Ford Motor Credit Company,* 788 S.W.2d 285 (Mo. banc 1990), Lake Lotawana argues that Lee's Summit lacks standing because the Supreme Court has held that "[a] party has standing to challenge the validity of an [annexation] ordinance only if standing is conferred by statute or another applicable ordinance or if the party can demonstrate that he is directly and adversely affected by the ordinance." Id. at 290. Lake Lotawana's reliance on Bridgeton is misplaced because that case did not involve a *quo warranto* action. The attorney general's or prosecuting attorney's granting permission for a private relator to proceed in a *quo warranto* action accords the private relator standing. *See State ex rel. Crist,* 588 S.W.2d at 12; *cf. Dryer v. Klinghammer,* 832 S.W.2d 3, 4 (Mo.App. 1992) (plaintiff lacked standing because *quo warranto* was correct mechanism to remove a director from office).

Lake Lotawana further argues that the circuit court erred in relying on *State ex inf. Nesslage v. City of Lake St. Louis,* 718 S.W.2d 214 (Mo.App.1986), *overruled on other grounds by City of St. Joseph,* 163

S.W.3d at 908–909, to hold that Lee's Summit had standing. The circuit court said:

> [I]n, *Nesslage* . . ., the City of Lake St. Louis had standing to file a quo warranto proceeding to challenge the Town of Dardenne Prairie's defective use of a petition to annex presented pursuant to Section 71.012. Given the history of the parties' attempts to annex the . . . property at bar, the Court concludes that Lee's Summit had the same standing possessed by the City of Lake St. Louis in *Nesslage v. City of Lake St. Louis.*

Lake Lotawana asserts that the circuit court's relying on *Nesslage* was error because the *Nesslage* court did not discuss standing. That the *Nesslage* court did not discuss standing does not matter. The parties in *Nesslage* necessarily would have had to have standing. The circuit court referred to *Nesslage* merely to show that the parties had standing in a case factually similar to the present dispute. It did not err.

## VALIDITY OF THE PETITION PRESENTED TO LAKE LOTAWANA

Lake Lotawana argues that the circuit court erred in voiding the petition for annexation of the Barber property because the petition for annexation was not verified. Lake Lotawana asserts that judicial and collateral estoppel prevented it from voiding the petition, and it contends that the requirements of Section 71.012, RSMo 2000, on which the circuit court relied are ambiguous concerning whether or not the petition had to be verified.

Our review of the circuit court's decision is limited to determining whether or not substantial evidence supports it, whether or not it is against the weight of the evidence, and whether or not the court properly declared and applied the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Lee's Summit had entered into a settlement agreement and consent decree regarding Lake Lotawana's annexation of other lands not at issue in this dispute. That decree said:

The Court, having examined the pleadings, documentary evidence, and the Settlement Agreement and Mutual Release entered into between [Lee's Summit] and the Intervenor, and being fully advised on the premises, finds and orders as follows:

1. [Lee's Summit's] claims within its Second Amended Petition and Petition in Quo Warranto relating to the Lake Lotawana annexations [a]ffected by Ordinance No. 691 and Ordinance No. 699 (as amended by Ordinance No. 705) are hereby dismissed with prejudice.

2. Lake Lotawana Annexation Ordinances No. 691 and No. 699 (as amended by Ordinance No. 705) are valid and effective as of their dates of passage.

3. All other claims for relief in Plaintiff's Second Amended Petition and Petition in Quo Warranto *remain pending, as more fully set forth in paragraph 3 of the Settlement Agreement and Mutual Release.*[3]

This consent decree did not estop Lee's Summit from asserting its claim of prior jurisdiction in this case. Paragraph Three of the settlement agreement and release, referred to in the consent decree, said:

Lee's Summit agrees to the dismissal with prejudice of all its claims, rights, damages, demands, lawsuits, grievances, injuries, liabilities and causes of action that Lee's Summit may have, up to the time of the execution of this Agreement, including, without limitation, the claims asserted or which could have been asserted, within the Lawsuit or in any other proceeding, relating to the Big Voluntary Annexation and the Gibson Annexation. It is expressly understood by the parties that this Agreement shall have no bearing or effect on Lee's Summit's challenges to any actions taken, or to be taken, by Lake Lotawana, other than the challenges to the validity of the Big Voluntary Annexation and the Gibson Annexation. It is understood by the parties that Lee's Summit waives its claim of prior jurisdiction over the properties that are the subject of Lake Lotawana's Ordinances No. 691 and 699 (as amended by Ordinance No. 705); however, *Lee's Summit* does not waive its claim to prior jurisdiction over any other properties involved in the Lawsuit.[4]

The consent decree's and settlement agreement's terms indicate that the parties intended for the consent decree to resolve only disputes regarding Lake Lotawana's annexations under its ordinances numbered 691 and 699, which are not at issue in the present dispute.

■ Lake Lotawana further complains of the circuit court's ruling that Lake Lotawana had not taken the first valid step towards annexation of the Barber property because the *petition* for voluntary annexation of the property was not verified as required by Section 71.012. Lake Lotawana argues that "the meaning of the word 'verified' is uncertain to a lay person of ordinary intelligence" and is therefore ambiguous. It argues that this ambiguity renders erroneous the circuit court's conclusion that Lake Lotawana had not met the requirements of Section 71.012.

The General Assembly did not define "verified" in Section 71.012. We accord a statute's undefined words "their plain and ordinary meaning as found in the dictio-

3. We added the emphasis.

4. We added the emphasis.

nary in order to ascertain the intent of lawmakers." *Cook Tractor Company, Inc. v. Director of Revenue,* 187 S.W.3d 870, 873 (Mo. banc 2006). BLACK'S LAW DICTIONARY defines "verify" as "confirm or substantiate by oath or affidavit." At 1561 (6th ed.1990). In the context of a civil action for a post-conviction remedy, the Supreme Court deemed "verify" to mean "a declaration ... that is supported by [an] oath or affirmation." *Crawford v. State,* 834 S.W.2d 749, 752 (Mo. banc 1992). Courts in sister jurisdictions have understood the term in the same way. *H.A.M.S. Company v. Electrical Contractors of Alaska,* 563 P.2d 258, 260 (Alaska 1977) ("sworn statement of the truth of the facts stated in the instrument which is verified"); *Sheeley v. City of Santa Clara,* 215 Cal.App.2d 83, 30 Cal.Rptr. 121, 123 (1963) ("an affidavit of the truth of the matter stated"); *Bell and Zajicek, Inc. v. The Heyward–Robinson Company, Inc.,* 23 Conn.Supp. 296, 182 A.2d 339, 340 (1962) ("a sworn statement of the truth of the facts stated in the instrument verified"); *Krol v. Indiana Board of Tax Review,* 848 N.E.2d 1185, 1188 n. 3 (Ind.Tax 2006) ("[t]o confirm or substantiate by oath or affidavit; to swear to the truth of"); *D.J. Fair Lumber Company v. Karlin,* 199 Kan. 366, 430 P.2d 222, 225 (1967) ("an affidavit attached to a statement as to the truth of the matters therein set forth"); *State ex rel. Clink v. Smith,* 16 Ohio St.2d 1, 240 N.E.2d 869, 870 (1968) ("an affidavit as to the truth of the matters set forth; sworn to"); *In the Matter of the Petition for Writ of Certiorari as to the Determination of Election on the Brookings School District's Decision to Raise Additional General Fund Property Tax,* 649 N.W.2d 581, 584 (S.D.2002) ("a [c]onfirmation of correctness, truth, or authenticity, by affidavit, oath, or deposition; [or][an][a]ffidavit of [the] truth of [the] matter stated").

Lake Lotawana argues that "verified" as the General Assembly used it in Section 71.012 is ambiguous because persons of ordinary intelligence do not understand the difference between verification and acknowledgment. It supports its contention by noting that the city clerk for Lee's Summit testified that she thought that "verified" meant that she or her staff had "verified that the person owned the property" and that it followed the Missouri Municipal League's model petition for voluntary annexation, which did not contain a verification. Lake Lotawana also alleges that other cities have permitted unverified voluntary annexation petitions.

Lake Lotawana's argument lacks merit. The term is clear and unambiguous as used in Section 71.012. It means that the facts presented in the petition must be supported by an affidavit, oath, or deposition as to their correctness, truthfulness, or authenticity. That some persons—even governmental officials—misconstrued Section 71.012's requirements does not mean that the statute is ambiguous. The petition presented to Lake Lotawana was acknowledged by means of notarization and was not verified. The circuit court ruled correctly.

Lake Lotawana argues that many municipalities have purportedly used the Missouri Municipal League's forms that do not contain a verification. Lake Lotawana argues that construing Section 71.012 to require a verification would endanger many municipal annexations and could throw hundreds of city boundaries enlarged by voluntary annexations into chaos. Lake Lotawana may be correct—we have no way of knowing—but the circuit court was duty bound to enforce the requirements of Section 71.012.

## RELATION BACK OF THE PURPORTED RATIFICATION OF THE VOLUNTARY PETITION

Lake Lotawana argues that the deficiencies identified by the circuit court in the

city's annexation of the Barber tract rendered the annexation merely voidable, not void as the circuit court ruled. The significance in the distinction lies in Lake Lotawana's assertion that it later ratified the voluntary annexation petition. If its annexation was voidable, Lake Lotawana argues, the lack of verification was not a reason to void the annexation in light of its later ratification. Lake Lotawana does not provide any authority for this argument, and we do not find any.

 Lake Lotawana argues that it verified the petition at trial when the property owner, Anthony Barber, testified that the petition was truthful. It asserts that the circuit court should have deemed this to be a verification that related back to the time of the original voluntary annexation petition. Were this argument correct, Lake Lotawana would have taken the first valid step, but it is not correct. Lake Lotawana relies on *Drury Displays, Inc. v. Board of Adjustment of the City of St. Louis,* 760 S.W.2d 112 (Mo. banc 1988), in support of its argument, but *Drury Displays* does not aid Lake Lotawana's position.

The *Drury Displays* court did declare that a petition that lacked a verification as required by Section 89.119, RSMo 1986, could be amended to include a verification. Although the petitioner filed the amended petition after a deadline had expired, the *Drury Displays* court deemed the amended petition to relate back to the date of the original pleading under Rule 55.33(c). Because the purpose of the deadline in Section 89.110 was to provide notice of the litigation and to attest to the pleading's truthfulness, the *Drury Displays* court concluded that "[a]llowing a petition to be verified by amendment does no violence to either of those objectives." *Id.* at 114. The statute at issue in *Drury Displays,* however-

er, specifically provided for relation back of an amended pleading.[5] Lake Lotawana points us to no authority providing for relation back of an amended voluntary annexation petition. More importantly, the *Drury Displays* court's decision rested on the defendant's suffering no prejudice. As noted *supra,* Lee's Summit will suffer prejudice if it is thwarted from acting on its prior jurisdiction.

Lake Lotawana argues that the circuit court erroneously relied on *American Industrial Resources, Inc. v. T.S.E. Supply Company,* 708 S.W.2d 806 (Mo.App.1986), "for the proposition that a voluntary petition may not be amended when verification is required by statute." The circuit court limited its reliance on *American Industrial Resources* to the proposition that it did not have jurisdiction when a statute conditions jurisdiction on requirements that have not been satisfied. The circuit court's reliance on *American Industrial* was not erroneous.

## LAKE LOTAWANA'S PURPORTED *DE FACTO* ANNEXATION

 Lake Lotawana argues that the circuit court's judgment was erroneous because Lake Lotawana had attained *de facto* annexation over the Barber property. Relying on *Emerson Electric Manufacturing Company v. City of Ferguson,* 376 S.W.2d 643 (Mo.App.1964), Lake Lotawana asserts that, after a municipality has achieved a *de facto* annexation, another municipality cannot later introduce a subsequent annexation ordinance and claim prior jurisdiction before a final judgment of ouster. *Emerson* does not stand for this proposition. The *Emerson* court held, in effect, that after a municipality had taken a first valid step at annexation, subsequent attempts by other municipalities

5. We distinguish *Standard of Beaverdale, Inc. v. Hemphill,* 746 S.W.2d 662 (Mo.App.1988), also relied on by Lake Lotawana, on the same grounds.

were void. Id. at 648–49. Hence, *Emerson* aids Lee's Summit's cause, not Lake Lotawana's.

Lake Lotawana also relies on *Blue Summit Landfill, Inc. v. Jackson County*, 532 S.W.2d 484 (Mo.App.1975), for the proposition that a municipality may not gain prior jurisdiction while another municipality has *de facto* status. The *Blue Summit* court simply held that a municipality operating under a *de facto* status may continue to exercise its power until a court enters judgment against it. Id. at 486. This holding does not apply to the present dispute.

■ Furthermore, contrary to Lake Lotawana's suggestion that Lee's Summit could not attack Lake Lotawana's attempted annexation because of Lake Lotawana's purported *de facto* status, *quo warranto* is specifically available to attack a *de facto* annexation. *Cherry v. City of Hayti Heights*, 563 S.W.2d 72, 80 (Mo. banc 1978); *City of Town and Country v. Goldman*, 778 S.W.2d 300, 302 (Mo.App.1989).

## APPLICATION OF CHAPTER 71, RSMO 2000

■ Lee's Summit stated in its ordinance to annex the Barber property that it was acting on authority granted by Section 71.015, RSMo 2000. Section 71.015 did not apply to Lee's Summit because it did not meet the statute's requirement that it not be "located in any county of the first classification which has adopted a constitutional charter for its own local government[.]" Lake Lotawana argues that, because Lee's Summit wrongfully based its authority on Section 71.015, its ordinance did not constitute a valid first step. Lake Lotawana's point lacks merit because Lee's Summit took an alternative first step that was valid: It enacted Ordinance 5800 pursuant to the procedures outlined in Sections 71.870 to 71.922, RSMo 2000.

■ Lake Lotawana further argues that, because Sections 71.870 to 71.922 refer to "unincorporated territory," the procedures set out in those statutes do not apply to land subject to a *de facto* annexation. This argument appears to present a question of first impression.

■ We reject Lake Lotawana's argument. Interpreting "unincorporated territory" to exclude land subject to a *de facto* annexation seems to conflict with the doctrine of prior jurisdiction. The prior jurisdiction rule provides:

> [W]here two public bodies such as a municipal corporation or school district each claim jurisdiction over the same territory by virtue of completed consolidation proceedings or by completed annexation proceedings, the one which takes the *first valid step* to establish the consolidation or annexation has the superior claim regardless of which one completes its proceedings first.

*City of St. Joseph*, 163 S.W.3d at 907 (emphasis in original). Even if Lake Lotawana achieved *de facto* annexation over the Barber property by completing the annexation procedure, it would not change the result in this case because the focus is on which municipality took the first valid step, not which completed the process first.

## ADMISSIBILITY OF EVIDENCE

Lake Lotawana argues that the circuit court erred in denying Lake Lotawana's motion *in limine* and evidentiary objections because the evidence to which Lake Lotawana objected was irrelevant and because the court made findings of fact not supported by the evidence. Because a circuit court has discretion in admitting evidence, our standard for reviewing a circuit court's admission of evidence is whether or not it abused its discretion. In judging this, we determine whether or not the

circuit court's ruling "is so unreasonable and arbitrary that it shocks the sense of justice and is clearly against the logic of the surrounding circumstances." *Alberswerth v. Alberswerth*, 184 S.W.3d 81, 100 (Mo.App.2006). The circuit court " 'is allowed wide latitude in the admission of evidence because it is presumed that it will not give weight to that evidence which is incompetent. It is, therefore, difficult to base reversible error on the erroneous admission of evidence in a court-tried case.' " *Santa Fe Trail Neighborhood Redevelopment Corp. v. W.F. Coen & Co.*, 154 S.W.3d 432, 445 (Mo.App.2005) (quoting *State, ex rel. Missouri Highway and Transportation Commission v. Quiko*, 923 S.W.2d 489, 498 (Mo.App.1996)).

■ We find no merit in Lake Lotawana's contention. It argues that the circuit court should not have admitted evidence regarding deficiencies in its attempted annexation of the Barber property because Lee's Summit abandoned its claim of prior jurisdiction based on its original resolution of intent. This abandonment, Lake Lotawana argues, rendered irrelevant evidence regarding deficiencies in Lake Lotawana's attempted annexation of the property. The contention is wrong because the circuit court held that Lee's Summit's prior jurisdiction was not based on its original resolution, but on its later adoption of Ordinance 5800.

■ Lake Lotawana also argues that the circuit court focused its ruling regarding prior jurisdiction on the lack of verification of the voluntary petition presented to Lake Lotawana, making irrelevant its findings outside those related to verification. The circuit court made several findings regarding deficiencies in the voluntary petition presented to Lake Lotawana other than the lack of verification. Even if making these factual findings were error, we do not discern—and Lake Lota-

wana does not articulate—how the purported error prejudiced it. "Merely asserting error without making a showing of how that error was somehow prejudicial is not sufficient for reversal." *Furlong Companies, Inc. v. City of Kansas City*, 189 S.W.3d 157, 166 (Mo. banc 2006). Moreover, a circuit court's erroneous findings concerning immaterial facts do not invalidate its judgment so long as it is supported sufficiently by substantial and competent evidence. *George C. Prendergast Construction Company v. Goldsmith*, 273 Mo. 184, 201 S.W. 354, 356 (1917).

Lake Lotawana further complains that certain findings of fact were contrary to, or not supported by, evidence. To the contrary, we found competent and substantial evidence to support each of the findings of which Lake Lotawana complains.

■ It first complains that insufficient evidence supported the circuit court's finding that "[t]he Jackson County prosecutor determined that Lee's Summit met the requirements to be a private relator under Section 531.010, RSMo., and Supreme Court Rule 98.01, and granted Lee's Summit permission to file this action and has authorized the prosecution of this action to final conclusion in the name of Lee's Summit." To the contrary, the deputy who signed the information on Sanders' behalf testified that he researched and reviewed the pleadings before issuing the information. The information states that it was issued "pursuant to Section 531.010 RSMo, et seq. and Missouri Supreme Court Rule 98[.]"

■ Lake Lotawana challenges the circuit court's finding that Lee's Summit "elected to adopt a resolution of intent to annex land under RSMo. Section 71.015 (2000)" as not supported by the evidence. To the contrary, testimony established

that Lee's Summit elected to follow the procedures of Section 71.015. Its ordinance cited Section 71.015 as its authority. Nonetheless, even were the procedures of Section 71.015 not availing to Lee's Summit, the circuit court's finding was not contrary to its judgment because Lee's Summit also adopted Ordinance No. 5800 under the authority of Sections 71.870 and 71.880, RSMo 2000.

■ We also reject Lake Lotawana's assertion that the circuit court's findings of fact concerning Lee's Summit's adoption of it resolutions were not relevant to the judgment because of the Supreme Court's decision in *City of St. Joseph*. The circuit court's findings concerning the resolutions were based on testimony that Lee's Summit adopted the resolutions to express its intent to annex to the east of its city limits. The circuit court did not find that the resolutions were the basis for Lee's Summit's claim of prior jurisdiction. Even if the findings were irrelevant, Lake Lotawana does not articulate any prejudice from the circuit court's making the findings.

■ Lake Lotawana asserts that evidence did not support the circuit court's finding that "Judge Williamson denied Lee's Summit's motion for [a] temporary restraining order, but advised the Lake Lotawana representatives present at the hearing that if it continued with its efforts to annex property within the Target Area, it did so at its own risk." Lake Lotawana argues that this finding was based on inadmissible hearsay to which it objected. Again, even if Lake Lotawana is correct, it does not articulate any prejudice from the finding.

■ Lake Lotawana next argues that substantial evidence did not support the circuit court's finding that conditions of the Barber petition were not satisfied because Barber testified that the conditions

were satisfied or waived. Other testimony indicated that conditions were not satisfied when Lake Lotawana adopted Ordinance 718. Moreover, because the circuit court's conclusion that the Barber petition was not a valid first step for reasons other than its unsatisfied conditions, Lake Lotawana was not prejudiced by the circuit court's finding, even if it were erroneous.

## ALLOWING LEE'S SUMMIT TO FILE A THIRD AMENDED PETITION

■ Lake Lotawana argues that the circuit court erroneously allowed Lee's Summit to file its third amended petition because it prejudiced Lake Lotawana and because Lee's Summit purportedly changed its legal theory for strategic purposes. The circuit court did not err.

■ Rule 55.33(a) mandates that circuit courts shall grant leave for filing amended pleadings "freely ... when justice so requires." We review a circuit court's decision to grant leave to file an amended pleading according to an abuse of discretion standard. *Lester v. Sayles*, 850 S.W.2d 858, 869 (Mo. banc 1993). Although Lee's Summit changed the facts upon which it based its claim of prior jurisdiction, it nevertheless continued to maintain a claim of prior jurisdiction in each of its petitions. We do not discern that the circuit court abused its discretion.

## CIRCUIT COURT'S REFUSAL TO MAKE REQUESTED FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ Lake Lotawana argues that the circuit court erred by not determining all of the facts that Lake Lotawana requested it to determine and by not providing a statement of grounds for its decision as required by Rule 73.01. Rule 73.01(c) requires the circuit court to "include in the opinion findings on the controverted fact issues specified by the party."

■ Contrary to Lake Lotawana's contention, the circuit court either determined all of the fact issues raised by Lake Lotawana or they were not germane to the issues and certainly did not interfere with our review. Although it is error for the circuit court not to make findings of fact on issues requested by a party, its failure to do so requires reversal only when it materially interferes with appellate review. *Cohen v. Cohen,* 178 S.W.3d 656, 662 (Mo. App.2005). The purported error did not interfere with our review.

## DISMISSAL OF LEE'S SUMMIT'S DECLARATORY JUDGMENT AND INJUNCTION

■ Lake Lotawana argues that the circuit court erred in not dismissing Lee's Summit's request for declaratory judgment and injunction because the circuit court found that *quo warranto* was the proper remedy. Lake Lotawana is correct. The circuit court should not have issued injunctive relief because *quo warranto* was Lee's Summit's exclusive remedy.

■ "Quo warranto and not injunction is the proper action for testing the City's right to the disputed territory [in a dispute over annexation]." *State ex rel. Kansas City v. Harris,* 357 Mo. 1166, 212 S.W.2d 733, 735 (1948). Indeed, this court's Southern District held, in *State ex rel. Members of Board of Education of Everton R–III School District v. Members of Board of Education of Greenfield R–IV School District,* 572 S.W.2d 899 (Mo.App. 1978), that *quo warranto* was the only proper remedy to resolve a dispute over the change of school boundaries when two school districts claimed jurisdiction over the same property.

The circuit court, therefore, should have dismissed Lee's Summit's action for declaratory judgment and injunction. We,

therefore, remand the case to the circuit court so that it can enter an order to dismiss these causes of action. We do not expect that this will alter the outcome of this case because, in determining that it should issue an order in *quo warranto* to oust Lake Lotawana from exercising jurisdiction over the Barber property, the circuit court necessarily had to determine that Lee's Summit had taken the first valid step to annexing the land. Lee's Summit did not seem to need to seek a declaratory judgment in addition to obtaining an order in *quo warranto.*

## OUSTER OF LAKE LOTAWANA FROM PROPERTY NOT IN DISPUTE

■ Lake Lotawana finally argues that the circuit court erroneously ousted it from the Barber property because its ordinance included property that Lake Lotawana had previously annexed. Lake Lotawana argues that, if we affirm the circuit court's judgment, we should amend it to exclude property Lake Lotawana inadvertently included in Ordinance No. 730. Lee's Summit concurs that the judgment should not include this land.

## CONCLUSION

We, therefore, remand the case to the circuit court so it can modify its decrees to exclude the property wrongfully included in its decree. It also shall enter an order to dismiss Lee's Summit's petition for declaratory judgment and for injunctive relief.

RONALD R. HOLLIGER, Presiding Judge, and LISA WHITE HARDWICK, Judge, concur.